**Herman MENES, Plaintiff,**

v.

**CUNY UNIVERSITY OF NEW YORK ("CUNY"), Samuel Phillips, CUNY Director of Personnel Relations, Eric Washington, CUNY Director Classified Staff and Labor Relations, CUNY–Bronx Community College ("BBC") President Carolyn Williams, CUNY–BCC Acting President Leo Corbie, CUNY–BCC Acting Dean Martin Pulver, CUNY–BCC Personnel Director Shelley Levy, CUNY–BCC**

Equal Opportunity Counselor Geraldyne Diallo, CUNY–BCC Business Manager Maher Mobasher, and CUNY–BCC Accounting Manager Rebeca Martinez, individually and in their official capacities, Defendants.

No. 97 CIV. 4334 RWS.

United States District Court,
S.D. New York.

April 12, 2000.

Aaron David Frishberg, New York, NY, for Plaintiff.

Michael D. Hess, Corporation Counsel of the City of New York, New York, Laura Eberstein, Assistant Corporation Counsel, Of Counsel, for Defendants.

## OPINION

SWEET, District Judge.

Defendants the City University of New York ("CUNY"), Samuel Phillips ("Phillips"), Eric Washington ("Washington"), Carolyn Williams ("Williams"), Leo Corbie ("Corbie"), Martin Pulver ("Pulver"), Shelley Levy ("Levy"), Geraldyne Diallo ("Diallo"), Maher Mobasher ("Mobasher"), and Rebeca Martinez ("Martinez") (collectively, "Defendants") have moved, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment to dismiss the complaint of Herman Menes ("Menes"), which alleges a discriminatory discharge on the basis of disability, age, national origin, and retaliation, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"), New York State Executive Law § 296 *et seq.* (the "State Human Rights Law" or "NYHRL"), the New York City Administrative Law, § 8-104 *et seq.*, (the "City Human Rights Law"), and 42 U.S.C. §§ 1981 and 1983. For the reasons set forth below, the motion is granted.

### The Parties

Menes is a New York City resident and a former employee of CUNY at its Bronx Community College campus ("BCC").

CUNY is a public university established by the City of New York under the laws of the State of New York. At all times relevant to this action, CUNY was an employer within the meaning of 42 U.S.C. § 2000e and had more than five hundred employees.

The following individual defendants were CUNY employees during the time period relevant to this action:

Phillips was the Director of Personnel Relations.

Washington was the Director of Classified Staff and Labor Relations, and worked under Phillips' supervision.

Corbie was BCC's Acting President until August 19, 1996.

Williams was BCC's President after August 19, 1996.

Pulver was BCC's Acting Dean during and after May, 1996, and worked under the supervision of Corbie or Williams.

Levy was BCC's Personnel Director, and worked under the supervision of Pulver, Corbie, and/or Williams.

Diallo was BCC's Equal Employment Opportunity Counselor, and worked under the supervision of Pulver, Corbie, and/or Williams.

Mobasher was BCC's Business Manager, and worked under the supervision of Corbie or Williams, and of Levy and Pulver.

Martinez was BCC's Accounting Manager, and worked under the supervision of Corbie or Williams, and of Levy, Pulver, and Mobasher.

### Prior Proceedings

On July 30, 1996, Menes filed with the Equal Employment Opportunity Commission (the "EEOC") charges against CUNY alleging discrimination for failure to accommodate Menes's disabilities. The EEOC issued Menes a right to sue letter on or about March 19, 1997. On June 12, 1997, Menes filed his complaint in the instant action. On July 1, 1998, he filed an

amended complaint. The instant summary judgment motion was filed on August 2, 1999. Papers were submitted through January 19, 2000, at which point oral argument was heard and the motion deemed fully briefed.

### The Facts

The facts set forth below are drawn from the parties' Rule 56.1 Statements and other materials submitted in connection with the motion. Where facts are in dispute, inferences are drawn in Menes's favor.

On September 27, 1994, Levy and Martinez interviewed Menes for a position as a College Accountant at CUNY's BCC campus. Martinez hired Menes, who began work on October 24, 1994. Menes was 58 years old at the time. He had previously worked for twenty-eight years for the Commodity Futures Trading Commission (the "CFTC"), where he had risen to the position of Senior Accountant.

Menes worked in the Accounting Department at BCC under Martinez, the accounting manager, who in turn reported to Mobasher, the business manager. Menes's responsibilities initially included handling the general ledger and bank reconciliations. In January 1995, he was given a satisfactory performance evaluation for the period ending December 31, 1994.

Menes was away from work for one week in January 1995 due to angioplasty surgery. Upon his return, Menes was given lesser responsibilities that did not require use of his accounting skills. He was assigned to work under the supervision of Andre Ramos, essentially doing data entry. He no longer worked on the general ledger, but on a purchase and expense ledger, and he handled travel vouchers and coded information into the computer. He continued to perform these duties until he was dismissed in November 1996. His former responsibilities were transferred to Mark Wellborn, who was 29 years old. At this time, Martinez commented that Menes had everything going for him except his age, and she made joking remarks concerning his angioplasty operation until he asked her to stop doing so.

Ramos did not have a college education and had far less accounting experience than Menes, and failed to train him adequately. On occasion, Martinez spoke Spanish in the office to Ramos and other employees, although they were all fluent in English, and Menes was present and he did not speak Spanish.

In April 1995, Menes had quadruple bypass surgery and was subsequently out on paid and unpaid medical leave. In June 1995, his cardiologist, Dr. Blake, told him that he was able to return to work that month. Dr. Blake submitted a letter to BCC stating that Menes was able to "return to work with full duties as of June 19, 1995." However, in June and July 1995, Menes's psychiatrist, Dr. Josef Weissberg, wrote two notes to BCC requesting two additional thirty-day extensions of Menes's medical leave, stating that Menes could not work effectively at that time due to post-surgery depression. Menes did not return to work until September 1995, approximately five months after his surgery.

In September 1995, Menes submitted to Levy, the BCC Director of Personnel, a letter from Dr. Weissberg noting that Menes had suffered intermittently from depression throughout his adult life and that he had recently had heart surgery. Weissberg stated that Menes was ready to work part-time at a job that did not require an arduous commute. Menes also submitted a letter from Dr. Inkeles, his internist, stating that it would be in Menes's best medical interest not to have to travel a long distance to work. Menes submitted his own letter requesting a reasonable accommodation as specified in Inkeles's note, and Menes's union also sent a letter on his behalf to the CUNY central office requesting that Menes be transferred to City College at 137th Street in Manhattan, which was closer to Menes's home on West 123rd Street. The union sent a follow-up letter in January 1996. CUNY did not grant a transfer to Menes,

claiming that it did not receive the letters from the union.

On September 13, 1995, BCC granted Menes a three day work week.

On May 29, 1996, Martinez gave Menes an unsatisfactory evaluation with a copy of a memorandum recommending that Menes be terminated, in which she stated that Menes was a slow learner who made continuous mistakes, whose work had to be reviewed or redone, and who required considerable supervision and repetitive instructions.

At a meeting on June 6, 1996, Shelley Levy informed Menes that BCC sought to extend his probation for six months and to issue an evaluation for him every two months. He would also be required to return to a five-day work week. Menes agreed to these demands under the threat of immediate termination. No one requested medical documentation of his continued need for the three day work week accommodation, nor suggested that the College would have provided the accommodation if such documentation was provided.

On June 20, 1996 Menes met with Geraldyne Diallo, BCC's Equal Employment Opportunity Officer, and Leo Corbie, the Acting President of BCC. Corbie directed Diallo to tell Levy to restore Menes's three-day work schedule. However, the three-day work week was never restored.

On July 30, 1996, Menes filed two charges of discrimination against CUNY with the EEOC alleging that CUNY discriminated against him by failing to accommodate his disabilities. CUNY was provided with Menes's EEOC complaint and a letter from Dr. Tuttman supporting his psychiatric condition. On August 30, 1996, Menes wrote a letter to Diallo and Mobasher indicating that his health had deteriorated due to stress and again requesting a three-day work schedule. In August and November 1996, Menes received two additional negative evaluations.

Menes was dismissed on November 26, 1996.

## Discussion

### I. The Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be granted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)); *see Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Burrell v. City Univ.,* 894 F.Supp. 750, 757 (S.D.N.Y.1995). If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate. *See Burrell,* 894 F.Supp. at 758 (*citing Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991)).

Materiality is defined by the governing substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of factual issues— where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985).

For a dispute to be genuine, there must be more than "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio*

Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

Additional considerations factor into a summary judgment motion in an employment discrimination action. *See Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100, 103 (2d Cir. 1989); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's documents, a trial court must be particularly cautious about granting summary judgment when the employer's intent is at issue. Affidavits and depositions must be scrutinized for circumstantial evidence which, if believed, would show discrimination. *See Gallo*, 22 F.3d at 1224. This does not suggest, however, that summary judgment is never appropriate in an employment discrimination action. The Second Circuit has made clear that the "impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir.1994); *see Meiri*, 759 F.2d at 998.

Where no evidence exists or only conclusory allegations of discrimination have been offered to suggest that an employer's motives are improper, summary judgment may be appropriate. *See Meiri*, 759 F.2d at 998; *see also Woroski v. Nashua Corp.*, 31 F.3d 105, 109–10 (2d Cir. 1994). After all, a party seeking to defeat a summary judgment motion cannot rely upon "conclusory allegations or denials," but rather must set forth "'concrete particulars'" showing that a trial is needed. *National Union Fire Ins. Co. v. Deloach*, 708 F.Supp. 1371, 1379 (S.D.N.Y.1989) (*quoting R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984)). Mere speculation or conjecture as to the true nature of facts cannot overcome the motion. *See Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986). The responding party "must show the existence of a disputed material fact in light of the substantive law." *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F.Supp. 560, 564 (S.D.N.Y.1995). In the absence of any disputed material fact, summary judgment is appropriate.

## II. *ADA and Rehabilitation Act Claims*

Menes alleges that the Defendants violated the ADA and the Rehabilitation Act by refusing to accommodate his disabilities and ultimately dismissing him on account of such disabilities.

The ADA prohibits covered employers from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

The Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). The Rehabilitation Act further provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act ..." *Id.* § 794(d).

When considering discrimination claims brought under the ADA, courts in this circuit apply the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d

Cir.1998). Under the *McDonnell Douglas* framework, a plaintiff "must initially come forward with facts sufficient to establish a prima facie case that his discharge was effected under circumstances giving rise to an inference of discrimination." *Greenway*, 143 F.3d at 52. The establishment of a prima facie case gives rise to the rebuttable presumption that the employer discriminated against the employee in an unlawful manner. *See id.* (*citing Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir.1997) (*in banc*), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998)). The burden of production then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for its actions. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the employer satisfies this burden, the presumption of discrimination is rebutted. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff must then prove, by a preponderance of the evidence, that the defendant's proffered explanation was merely a pretext for discrimination. *See id.; Greenway*, 143 F.3d at 52.

■ In order to make out a prima facie case under the ADA, Menes must show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [Defendants] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position sought; and (4) that the [Defendants] refused to make such accommodations." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir.1999) (*citing Stone v. City of Mount Vernon*, 118 F.3d 92, 96–97 (2d Cir.1997), *cert. denied*, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998)). "An employer can defeat a prima facie claim if it shows (1) that making a reasonable accommodation would cause it hardship, and (2) that the hardship would be undue." *Id.* (*citing Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir.1995)).

The ADA defines "disability," with respect to an individual, as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

■ Menes claims that he was disabled due to both his heart condition and his severe depression. The heart condition allegedly substantially limited his major life activities of working and walking, and the depression substantially limited the major life activity of working.

Under EEOC regulations, an individual is substantially limited if he or she is "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which [such] individual can perform a particular major life activity" as compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1)(i)–(ii). "Major life activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i). The three factors to be taken into account in the determination of whether an impairment substantially limits a major life activity are: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact of or resulting from the impairment. *See id.* § 1630.20(j)(2)(i)–(iii).

Menes claims that his heart condition and related chest pains substantially limit his major life activities of walking, working, and commuting to work. However, weighing the evidence in the light most favorable to Menes, it cannot be concluded that these major life activities were significantly restricted by the heart condition and chest pains.

Menes was able to travel to and from BCC from September 1995 until he was terminated in November 1996. Menes acknowledged that his attendance during that time was "very very good." Moreover, although Menes has stated that he had difficulty walking up the hill to BCC, nowhere has he claimed that he had difficulty walking generally.

Courts which have considered difficulties with walking have not found disabilities cognizable under the ADA absent far more severe individual circumstances than those faced by Menes. *See, e.g., Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir.1996) (no ADA disability found although individual had trouble climbing stairs due to a limp as a result of severe post-traumatic degenerative joint disease); *Stone v. Entergy Servs., Inc.*, No. 94–2669, 1995 WL 368473, at *4 (E.D.La. June 20, 1995) (muscle weakness, partial paralysis, one leg longer than the other and one foot longer than the other due to bout from polio, which required stopping to rest while climbing stairs, not disability under the ADA); *Worthington v. City of New Haven*, No. 3:94–Cv–00609 (EBB), 1999 WL 958627, at *1 (D.Conn. Oct. 5, 1999) (physical impairment substantially limited the major life activity of walking where plaintiff had had four knee operations, had no ligament left in her knee and could hardly bend it, and had to walk with a cane). Menes's difficulty walking up the hill, his chest pains, and his shortness of breath are simply insufficient to establish a significant enough restriction in the life activity of walking to constitute a substantial limitation sufficient to qualify as a disability under the ADA.

No evidence has been presented to suggest that Menes's heart condition substantially limited his ability to work. Moreover, Menes has cited no authority supporting the proposition that "commuting to work" is a major life activity, nor has this Court located any.

In sum, viewing the evidence in the light most favorable to Menes, it cannot be established as a matter of law that Menes was an individual with a physical disability

within the meaning of the ADA. His impairment did not substantially limit any of his major life activities; nor has any evidence been presented of a record of such a substantially limiting impairment; nor that he was regarded as having such an impairment.

 Menes also claims that his chronic depression substantially limited his ability to work. Depression can qualify as a "mental impairment" under the ADA. *See Fitzgerald v. Alleghany Corp.*, 904 F.Supp. 223 (S.D.N.Y.1995). However, "a medical diagnosis of depression is not the sine qua non" of having an ADA disability. *See Adams v. Rochester Gen. Hosp.*, 977 F.Supp. 226, 232 (W.D.N.Y.1997). As with a physical impairment, a "mental impairment" does not rise to the level of a "disability" unless such impairment "substantially limits" a major life activity. *See Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir.1996); *Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790, 797 (W.D.N.Y.1996).

In addition, Menes must be able to show that his depression substantially limited his ability to work not only at his existing job, but at any job suitable for a person with comparable training, skills, and abilities. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); *see Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994) ("person found unsuitable for a particular position has not thereby demonstrated an impairment substantially limiting such person's major life activity of working"); *Kirkendall v. U.P.S. Inc.*, 964 F.Supp. 106, 110 (W.D.N.Y.1997) (if major life activity is "working," impairment must limit employment generally).

It is not clear from Menes's submissions what exactly his mental disability was during his employment at BCC, and to what extent such disability resulted from his heart surgery or was a continuation of the chronic depression and anxiety from which he had previously suffered. His chronic

depression and anxiety could not constitute a substantially limiting mental impairment, based on the fact that he worked full-time for twenty-eight years for the CFTC and rose to a senior position. However, Menes has submitted evidence that his doctors requested that he be put on a work schedule of three days a week at BCC due to his post-surgery depression, an indication that his mental disability was strongly affecting his ability to work. Moreover, it is likely that this depression was not specifically connected to Menes's job at BCC, but would have occurred at any job. The evidence suggests that the heightened depression was not job-related, but an exacerbation of an underlying depression brought on by the heart surgery.

In addition, viewing the evidence in the light most favorable to Menes, the depression was continuing. After Menes was required to return to a five-day work week, his depression was again exacerbated. This occurred over a year after his surgery, and indicates that the mental disability had a long-term impact on Menes.

For these reasons, Menes has established that he is an individual with a mental disability within the meaning of the ADA.

The Defendants also had notice of Menes's disability through Menes's doctors' notes and his request for a three-day week following his return from surgery.

█ Menes has not demonstrated, however, that with reasonable accommodation he could perform the essential functions of his position. Menes was granted a reasonable accommodation for his post-surgery depression: a three-day work week. Nowhere has he disputed that this accommodation was sufficient to enable him to cope with his depression and, in his view, perform his duties at work. However, in the work period ending in May 1996, Menes received a strongly negative work evaluation. Menes disputes the merits of this evaluation, but, significantly, he emphatically does not claim that his mental impairment prevented him from performing his duties during this period. By contrast, he believes he performed more than adequately. He admits, however, that he made frequent mistakes in his work and requested more supervision and training. Overall, the evidence suggests that, even when granted a reasonable accommodation, Menes could not perform the essential functions of his position. This is fatal to his ADA and Rehabilitation Act claims, as it is an essential element of a prima facie case.

█ Furthermore, even if this Court were to conclude that Menes had made out a prima facie case on the mental disability claim, Defendants have set forth a legitimate non-discriminatory reason for his termination. To defeat the motion for summary judgment, Menes must produce sufficient evidence to support a rational finding that the reasons proffered by the Defendants were false, and that more likely than not, his alleged discriminatory reasons were the real reasons for his termination. *See Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994) (*citing St. Mary's*, 509 U.S. at 515, 113 S.Ct. 2742).

As set forth above, Defendants maintain that Menes was not able to perform multiple tasks and complete his work in a timely matter. Martinez's negative evaluation delineates the specific problems with Menes's work. In a memorandum dated May 30, 1996, Martinez recommended that Menes be dismissed because he continuously made mistakes in coding purchase requisitions, reviewing travel vouchers, and preparing schedules; he was slow in learning the basic department functions assigned to him; his work always had to be reviewed or redone; and he required considerable supervision and repetitive instructions and was careless with simple tasks.

After this evaluation Menes received two more negative evaluations, in August and November 1996. The inference can easily be drawn that Menes's poor performance, as indicated by his negative performance evaluations, was the reason for his termination. *See Meiri v. Dacon*, 759 F.2d 989,

995 (2d Cir.1985); *Dzaba v. Haythe & Curley,* No. 94–1767, 1996 WL 31156, at *4–5 (S.D.N.Y. Jan. 26, 1996) (poor evaluations permit inference that employee was terminated for poor performance and not unlawful discrimination); *Stein v. McGraw–Hill, Inc.,* 782 F.Supp. 207, 212–13 (S.D.N.Y.1992) (same). Because Defendants have articulated a legitimate, non-discriminatory reason for terminating Menes, he has the burden of proving by a preponderance of the evidence that Defendants' stated reasons are merely a pretext for discrimination. *See Greenway,* 143 F.3d at 52.

Menes maintains that Martinez's negative evaluation in May 1996 was unfounded, and that the alleged deficiencies in his performance after she recommended his termination were not reported credibly or in an unbiased manner. However, Menes offers no proof to support these blanket allegations, or to suggest that he was terminated because of his disability. Consequently, Menes is unable to show that the legitimate non-discriminatory reasons articulated by Defendants for his termination are pretexts for discrimination.

### III. *State Law Disability Claims*

In addition to bringing this action under the ADA and Rehabilitation Act, Menes also makes claims under the NYHRL and the New York City Administrative Code, based on the same facts and circumstances as the ADA and Rehabilitation Act claims.

■ The NYHRL states in relevant part that it shall be an "unlawful discriminatory practice" for an employer, because of the disability of any individual, to "discharge from employment such individual or to discriminate against such individual . . . in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). The term "disability" is defined as:

(a) a physical, mental or medical impairment . . . which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory techniques, or (b) a record of

such an impairment, or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.

N.Y. Exec. Law § 292(21).

The NYHRL definition of disability is slightly broader than the ADA definition. *See Reeves,* 140 F.3d at 155. Thus, Menes necessarily has a mental disability under the NYHRL. The definition is not so broad, however, as to include Menes's physical ailments as a disability.

■ However, Menes's claim under the NYHRL fails for reasons similar to those articulated in the section addressing his ADA claim. The same *McDonnell Douglas* burden-shifting analysis applies to NYHRL discrimination claims, whether brought pursuant to the ADA, Title VII, or other federal employment discrimination statutes. *See, e.g., Pace v. Ogden Servs. Corp.,* 257 A.D.2d 101, 692 N.Y.S.2d 220, 223 (3d Dep't 1999). As noted above, Defendants provided a legitimate, non-discriminatory reason for terminating Menes: even when he had been provided with a reasonable accommodation for his disability—a three-day work week—he could not perform his job at a minimum standard of acceptability. For this reason, his NYHRL claims must fail.

In addition, there is no difference between the rights granted under the New York City Administrative Code Title 8 and the rights granted under the NYHRL and no difference in "the manner or amount of proof required." *See Buckhout v. New York City Comm'n on Human Rights,* 203 A.D.2d 67, 609 N.Y.S.2d 608 (1st Dep't 1994). Thus, Menes's claim asserted under the New York City Administrative Code must likewise be dismissed.

## IV. *Individual Liability Under the ADA and the Rehabilitation Act*

█ "Individual defendants may not be held personally liable for alleged violations of the ADA or the Rehabilitation Act." *Sutherland v. New York State Dep't of Law,* No. 96 Civ. 6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) (*citing Coddington v. Adelphi Univ.,* 45 F.Supp.2d 211, 215 (E.D.N.Y.1999); *Harrison v. Indosuez,* 6 F.Supp.2d 224, 229 (S.D.N.Y. 1998); *Cerrato v. Durham,* 941 F.Supp. 388, 395 (S.D.N.Y.1996); *Yaba v. Cadwalader, Wickersham & Taft,* 931 F.Supp. 271, 274 (S.D.N.Y.1996)). Nor can individuals be named in their official or representative capacities as defendants in ADA or Rehabilitation Act suits. *See id.* (*citing Harrison,* 6 F.Supp.2d at 229; *Lane v. Maryhaven Center of Hope,* 944 F.Supp. 158, 162–63 (E.D.N.Y.1996)). Accordingly, the ADA and Rehabilitation Act claims against the individual defendants in both their individual and official capacities are dismissed.

### V. *The Section 1983 Claims*

Menes has asserted various claims pursuant to 42 U.S.C. § 1983, which provides, in relevant part:

> Every person who, under color [of law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

Defendants maintain, first, that they entitled to summary judgment with regard to CUNY because Menes has failed to establish that a policy or custom of CUNY caused the deprivation of his federal constitutional rights, as he did not present evidence that the municipal action was taken with "deliberate indifference" to its obvious or known unconstitutional consequences. *See Board of County Comm'rs. v. Brown,* 520 U.S. 397, 406–07, 117 S.Ct.

1382, 137 L.Ed.2d 626 (1997) (*citing Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

█ "[A] municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior." *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 122 (2d Cir.1991); *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. In order to establish the liability of such defendants in an action under § 1983 for unconstitutional acts by such employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy. *See, e.g., Pembaur v. City of Cincinnati,* 475 U.S. 469, 478–79, 106 S.Ct. 1292, 1297–98, 89 L.Ed.2d 452 (1986); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *Fiacco v. City of Rensselaer,* 783 F.2d at 326, 328 (2d Cir.1986).

█ In order to satisfy this requirement, Menes need not prove that CUNY had a formal rule or regulation that caused the constitutional deprivation. *See Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995); *Villante v. Dep't of Corrections,* 786 F.2d 516, 519 (2d Cir.1986). Rather, he need only produce evidence that CUNY was aware of a pattern of unconstitutional conduct by its employee but failed to take any action. *See Walker v. City of New York,* 974 F.2d 293, 300 (2d Cir.1992).

█ However, Menes has not produced any evidence of "deliberate indifference" on the part of CUNY. Moreover, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy. *See, e.g., City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *Fiacco v. City of Rensselaer,* 783 F.2d at 328 (2d

Cir.1986). As no evidence has been adduced in this case suggesting that a custom or policy of CUNY caused a deprivation of Menes's civil rights, the § 1983 claim will be dismissed with regard to CUNY.

Menes also alleges that Defendants subjected him to age and national origin discrimination in violation of the Fourteenth Amendment's Equal Protection Clause, the State Human Rights Law, and the City Human Rights Law.

██ Section 1983 furnishes a cause of action for the violation of federal Constitutional rights, *see Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), and provides a vehicle through which public sector employees may vindicate their constitutional rights to be free from discrimination. Like Title VII claims, Section 1983 claims premised upon equal protection violations ultimately demand proof of purposeful discrimination. *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). Because the standards governing liability under the NYHRL are virtually identical to those applied to Title VII and Section 1983 claims, the discussion below also equally applies to Menes's state law causes of action. *See Ortega*, 1999 WL 342353, at *3 n. 2; *Gibson*, 1998 WL 132796, at *4 n. 4; *see also Tomka*, 66 F.3d at 1305 n. 4.

██ To establish a prima facie case of unlawful employment discrimination under Title VII, a plaintiff must show that (1) he belongs to a protected class; (2) his job performance was satisfactory; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination based on membership in the class. *See Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 311–12 (2d Cir.1997). Establishing a prima facie case of discrimination is not an onerous task. *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. If established, the burden then shifts to the defendant to articulate legitimate, non-discriminatory

reasons for its actions. To survive summary judgment, a plaintiff must ultimately demonstrate that a genuine issue of fact exists as to whether the defendant's proffered reason or explanation for the employment action was merely a pretext, and that the action was instead prompted by an impermissible motive. *See Brennan v. City of White Plains*, 67 F.Supp.2d 362, 372 (S.D.N.Y.1999); *see also Samuels v. New York State Dep't of Correctional Servs.*, No. 94 Civ. 8645(SAS), 1997 WL 253209, at *4 (S.D.N.Y.1997).

██ Menes, who was 58 at the time of the alleged discriminatory period, meets the first prong of the test. He also meets the third prong due to his termination. However, as recounted above, Menes's repeated negative evaluations provide ample evidence that his job performance was not satisfactory. Also, although Menes alleges that his termination from BCC was discriminatory on the basis of age, he has not demonstrated that such an adverse employment action occurred under circumstances giving rise to an inference of discrimination. He offers no evidence, merely speculation as to his discrimination claims. He alleges that Martinez discriminated against him on the basis of his age because she transferred the responsibility for general accounts from him to Mark Wellborn. Menes claims that since his credentials were superior to those of Wellborn, he could not think of another reason for her having transferred the accounts.

Menes also alleges that on one occasion Martinez made a reference to his age when stating that he had everything going for him except for his age. However, in his deposition Menes was not clear as to the precise statement she made, and he could not recall her saying any additional comments. This bare comment, out of context, is insufficient to prove that any adverse employment action occurred under circumstances giving rise to an inference of discrimination.

Moreover, the fact that Martinez was the same person who decided to hire and

fire Menes further weighs against any inference of discrimination. As the Second Circuit has observed, "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997).

Menes also alleges that he was discriminated against on the basis of his national origin, but he does not present evidence that could give rise to this inference. His blanket allegations and conclusory statements are plainly insufficient to establish a prima facie case of discrimination. Defendants are entitled to summary judgment on his claims of age and national origin discrimination under the Fourteenth Amendment and State and City Human Rights Laws.

■ In addition, the individual defendants have pressed for dismissal of the § 1983 claims brought against them in their individual capacities, on the ground that they are shielded from liability by the doctrine of "qualified immunity." Under this doctrine, state officials performing discretionary functions are shielded from liability for civil damages if their conduct either "did not violate clearly established rights of which a reasonable person would have known," or "it was objectively reasonable to believe that [their] acts did not violate [those] clearly established rights." *Brennan*, 67 F.Supp.2d 362, 375; *see Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir.1998) (citations omitted); *Brown v. City of Oneonta*, 106 F.3d 1125, 1130–31 (2d Cir.1997). Underlying this doctrine is a concern that governmental officials be permitted to perform their jobs without the "constant threat of individual liability resulting from actions taken in compliance with the law of the time." *Poulsen v. City of North Tonawanda*, 811 F.Supp. 884, 898 (S.D.N.Y.1993).

■ For the reasons set forth above, qualified immunity is appropriate in this case.

## VI. *The Retaliation Claim*

The ADA prohibits retaliation against an employee who has engaged in statutorily protected activity:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

■ To establish a prima facie retaliation claim under the ADA, a plaintiff must show that: (1) he was engaged in a protected activity; (2) he suffered an employment action disadvantaging him; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (*quoting Tomka*, 66 F.3d at 1308); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996).

Retaliation claims under the ADA are subject to the same three-tiered burden shifting analysis established in *McDonnell Douglas*. *See Quinn*, 159 F.3d at 768. Plaintiff bears the initial burden of establishing a prima facie case of retaliation by a preponderance of the evidence. If plaintiff meets this initial burden of establishing a prima facie case, defendant must then articulate a legitimate, non-retaliatory reason for the complained action. If defendant meets its burden, plaintiff must then present evidence sufficient to show that defendant's proffered reason was merely a pretext for impermissible retaliation. *See Quinn*, 159 F.3d at 768–69; *Tomka*, 66 F.3d at 1308–09.

■ With respect to the first prong, in order to prove that Menes engaged in a protected activity, he "need not establish that the conduct he opposed was in fact a violation of the [ADA]," but only that he possessed a "good faith, reasonable belief that the underlying employment practice

was unlawful." *Manoharan v. Columbia Univ. College of Physicians and Surgeons,* 842 F.2d 590, 593 (2d Cir.1988) (citation omitted). Here, Menes engaged in a protected activity by filing a discrimination charge with the EEOC on July 30, 1996. *See Hawkins v. Astor Home for Children,* No. 96 Civ. 8778(SS), 1998 WL 142134, at *10 (S.D.N.Y. March 25, 1998) (filing of EEOC charge is a protected activity). Furthermore, the second prong—that the employer took an adverse employment action disadvantaging Menes—is satisfied by CUNY's termination of his employment. *See Quinn,* 159 F.3d at 769. With respect to the third prong, a causal connection "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Manoharan,* 842 F.2d at 593 (*citing Davis v. State Univ. Of NY,* 802 F.2d 638, 642 (2d Cir.1986)); *see also Valentine v. Standard & Poor's,* 50 F.Supp.2d 262, 290 (S.D.N.Y. 1999) (causal nexus established where plaintiff was fired less than two months after filing his charge with the EEOC). In the present case, Menes's termination occurred almost four months after he filed the EEOC charge. He alleges that in retaliation for filing the EEOC complaint, Defendants treated him in a discriminatory manner and terminated him. Moreover, he alleged that Martinez gave him two unsatisfactory ratings and closely supervised him in retaliation of his EEOC charge. As recounted above, however, in May 1996, two months before Menes filed his EEOC charge, Martinez gave Menes a negative evaluation and recommended that he be terminated. Because the recommendation to terminate Menes occurred before Menes filed his EEOC complaint, no causal nexus exists between Menes's termination and his filing of the EEOC charge. Defendants are therefore entitled to summary judgment on Menes's retaliation claim.

## VII. *First Amendment Claim*

■ Menes also alleges that Defendants retaliated against him in violation of his First Amendment right to free speech and to petition the government. He brings this claim pursuant to 42 U.S.C. § 1983. Claims brought under the Right to Petition Clause or the Free Speech Clause of the First Amendment are governed by the same interest balancing test. *See White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1059 (2d Cir.1993). Under either clause, in order to bring a successful cause of action, a plaintiff must establish that: (1) he or she spoke out on matter of public concern, and (2) he or she was retaliated against because of that speech. *See id.* at 1058. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

■ Menes has failed to state a claim under the First Amendment. "[W]hen an employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. 138 at 147, 103 S.Ct. 1684. Had Menes's complaints to his supervisors implicated system-wide discrimination they would have unquestionably involved a matter of public concern. *See Marshall v. Allen,* 984 F.2d 787 (7th Cir. 1993) (allowing § 1983 claim where plaintiff was discharged following his support of other employees who had filed suit for gender discrimination); *Wilson v. UT Health Ctr.,* 973 F.2d 1263, 1266 (5th Cir. 1992) (upholding § 1983 claim where plaintiff's complaints concerned the routine use of sexually suggestive language by police officers toward all female officers as well as systemic instances of other forms of sexual harassment); *Auriemma v. Rice,* 910 F.2d 1449, 1460 (7th Cir.1990)

**310**

(*in banc*). Here, however, there has been no First Amendment violation, as Menes's complaints were "personal in nature and generally related to his own situation." *Ezekwo v. NYC Health & Hospitals Corp.*, 940 F.2d 775, 781 (2d Cir.1991) (holding that resident's complaints about aspects of residency program that negatively affected her did not implicate matters of public concern); *see also Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143 (2d Cir.1993) (government employee's complaint of sexual harassment which was motivated by and related to an individual employment situation not a matter of public concern.).

Even if Menes's complaint could be viewed as a matter of public concern, he would be unable to satisfy the causation prong of the test for the same reasons that he cannot make out a retaliation claim. *See Dimino v. New York City Transit Authority*, 64 F.Supp.2d 136, 157 (E.D.N.Y.1999) (although complaint touching on rights of pregnant women to be treated equally would seem a matter of public concern, plaintiff could not satisfy the causation prong of the test for same reasons that plaintiff could not meet Title VII retaliation claim). Therefore, Defendants' motion for summary judgment on Menes's First Amendment claim is granted.

### Conclusion

For the reasons set forth above, Menes's complaint is dismissed in its entirety.

Settle judgment on notice.

It is so ordered.