**Todd DEAN, Plaintiff,**

v.

**WESTCHESTER COUNTY P.R.C., Defendant.**

**No. 03 CIV. 779(CM).**

United States District Court, S.D. New York.

March 18, 2004.

Todd M. Dean, Montrose, NY, Pro se.

Charlene M. Indelicato, Westchester County Attorney, Shannon Brady Sarles, Westchester County Attorneys Office, White Plains, NY, for Defendant.

### Decision and Order Granting Defendant's Motion to Dismiss.

MCMAHON, District Judge.

## I. INTRODUCTION

Plaintiff Todd Dean brings this action under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* alleging that the Westchester County Department of Parks, Recreation and Conservation terminated his employment due to discrimination based on his disability. Mr. Dean also alleges Westchester County discriminated against him because of their failure to hire him, their failure to promote him and because of unequal terms and conditions of his employment.

The Plaintiff's first complaint was dismissed on a 12(b)(6) motion for failure to state a claim. Plaintiff was given leave to file an Amended Complaint in order to meet, if he could, the statutory requirement that he allege that he either had or was perceived as having a disability that impaired some major life activity. Plaintiff submitted an amended complaint, and then a Second Amended Complaint.

The Defendant again moves to dismiss, arguing (1) plaintiff has failed to plead that he suffers from a disability under the ADA, and (2) assuming arguendo that the Plaintiff is ADA-disabled, he fails to plead any facts tending to show that he was discriminatorily treated on the basis of his alleged disability. Defendant also claims that the Plaintiff's complaint should be stricken pursuant to Rule 11(a) of the Federal Rules of Civil Procedure, because it was not signed.

For the following reasons, Defendant's motion to dismiss should be **GRANTED** and the Plaintiff's amended complaint be **DISMISSED**. Defendant's foolish motion pursuant to Rule 11 I will ignore.

## II. FACTS

Plaintiff, Todd Dean was employed as a Parks Worker III by the County Defendant from March 20, 2000 to December 10, 2001. Westchester County Department of Parks, Recreation and Conservation is a subdivision of Westchester County, which is a municipal corporation duly organized and existing under the laws of the State of New York.

In Plaintiff's Amended and Second Amended Complaints,[1] he alleges that he

---

1. The only difference between the Amended and Second Amended Complaints is that the latter does not seem to include all of the exhibits, but does include a document describing how plaintiff's alleged disability affects his major life activities. I am reading the two pleadings together for purposes of determining this motion.

was discriminated against based on his disability of depression, anxiety and post traumatic stress disorder. (Amended Complaint, Paragraph 7). He claims that Defendant discriminated against him by: (1) failing to hire him, (2) terminating his employment, (3) failing to promote him, and (4) implementing unequal terms and conditions of his employment. (Amended Complaint, Paragraph 4). Plaintiff attaches numerous exhibits to his pleadings, which chronicle events and conversations that took place with fellow employees and supervisors.

Plaintiff was originally referred to the Parks Department through the Department of Social Services (DSS) Pride in Work Program in February 2000. Plaintiff claims that, at a brief interview for employment, he was asked, by Ilene Spring, why someone with his background was not working. Plaintiff alleges that his reply was, "I came down with this depression crap." (Amended Complaint, Page 1). Nonetheless, he was sent by the Parks Department to Blue Mountain Park, and was given training at the Sportsman Center under the supervision of William Harbolic. On February 29, 2000, Mr. Harbolic submitted a special request that Mr. Dean be hired as a summer worker as soon as possible. As a result of that request, Defendant claims that Plaintiff was hired as an hourly Summer Parks Worker III, effective March 20, 2000. (Memo in Support of Defendant's Motion to Dismiss, Page 3).

There is discrepancy as to Plaintiff's title and as to whether he was classified as "Full-time", "Temporary", "Seasonal", "Annual", or "Hourly". (Amended Complaint, Exhibit E). Plaintiff claims that pursuant to Civil Service Rules and Regulations, an employee in his position is entitled to certain health benefits. *Id.* He also claims that he was entitled to a raise and

that other people were promoted or hired to positions over him even though he had seniority and better qualifications. (Amended Complaint, Page 2). Plaintiff claims that other employees were hired more quickly than he was and they were given higher pay. *Id.* Plaintiff also claims that he was not allowed to work overtime hours. (Amended Complaint, Page 2).

Plaintiff claims that he went to his supervisor Bill Harbolick and complained about the lack of equipment.[2] Plaintiff alleges that he was told, "If you grieve anything, you will be weed wacking for the rest of your life." (Amended Complaint, Page 2). He says that Bill Harbolick took away his overtime hours. Plaintiff then went to Ilene Spring to complain, and she gave him back his overtime hours. *Id.* At this point Plaintiff alleges that Bill Harbolick threatened to fire him for going over his head. *Id.* Plaintiff claims that he called a man by the name of John Baker to complain about Bill Harbolick, and he was told that the decision about overtime hours was, "None of his business" and "That's what they felt like doing." *Id.* Plaintiff claims that he was asked by Bill Harbolick if he was "retarded." *Id.* He was also introduced by Carson Bates, to Kenny Meyers as, "Todd, Todd is a little retarded." *Id.* Plaintiff alleges that Steve Nickerson made him weed wack, as opposed to mow grass and that he was written up for insubordination, while James Clark was not written up. *Id.* He claims that his co-workers were asking for transfers, because they wanted to make his job difficult. *Id.* Plaintiff makes various allegations of unfair treatment by his co-workers and attaches to his complaint, several handwritten exhibits and photographs of chopped wood and shoveled snow. (Amended Complaint, Exhibits A–L).

---

**2.** Plaintiff does not specify what was not available, but he does not allege that the lack of equipment had anything to do with his alleged disability.

Plaintiff claims that his job location was transferred, once to Blue Mountain and once to Croton Park, in retaliation for his various complaints. Plaintiff claims that he then wrote to Chip Matthews about a raise. (Amended Complaint, Page 2). Plaintiff also wrote to the New York State Civil Service Commission to clarify his job title and request confirmation about his rights to a pay raise. (Amended Complaint, Exhibit G).

*Plaintiff's Various Complaints*

Plaintiff made a complaint to the Westchester County Office of Equal Employment Opportunity (WCEEO) in or about May 2001, alleging retaliation and unfair employment practices. (Amended Complaint, Exhibit H). He did not allege any violation of the ADA. *Id.*

In August 2001, WCEEO submitted a report finding that there was evidence of unfair overtime pay practices, such as not being paid for overtime work and not being given an adjustment in salary when required. *Id.* The EEO also found that some of Plaintiff's supervisors may have created the perception of a hostile work environment, and administrative corrective action was recommended. *Id.* The EEO also found that evidence of questionable record keeping practices, lack of understanding of the proper departmental policies regarding sign-in and sign-out practices, and uneven interpretation of overtime hours by the County. *Id.*

Plaintiff thereafter filed a complaint with the New York State Division of Human Rights (SDHR) on August 7, 2001, alleging discrimination in the workplace on the basis of his disability. (Amended Complaint, Exhibit G). Plaintiff identified his disability as depression. *Id.* Plaintiff attached his letter to the SDHR to the complaint, which gives a time-line of comments made to him by various co-workers and supervisors. (Amended Complaint, Exhibit L) Some comments refer to Plain-

tiff as homosexual. *Id.* Plaintiff also alleged in his complaint to the SDHR, that Bill Harbolic asked him, "Am I confusing you yet?" and claimed that Harbolic asked Plaintiff if he was retarded. (Amended Complaint, Exhibit G). Plaintiff also alleged that County Defendant knew of his disability, because he came to them from Pride and Work, a social service program for public assistance recipients. *Id.*

By determination dated October 29, 2002, the SDHR found that there was no probable cause to believe that the County discriminated against the Plaintiff based on his alleged disability. *Id.* The SDHR found that Defendant had no notice of Plaintiff's disability and that the social service program from which Plaintiff came is not a program for disabled workers. *Id.* The SDHR also found that the comments made to plaintiff were vague and not particularly related to Plaintiff's disability. *Id.* Plaintiff received a right to sue letter from the EEOC in regard to this complaint for his allegation of discrimination, on December 15, 2002. (Amended Complaint, Page 3).

Plaintiff claims that he was called to a meeting to discuss his complaint to the SDHR. Present were Mr. Motley, Chip Matthews, John Baker, Bruno Rawl, Ilene Spring, Joan Vassari, Bob Ferrara, and Mr. Stout. (Amended Complaint, Page 2). He claims that he was told by Mr. Motley, "If it hadn't come to my attention that you were a dang good worker, you would be looking for a job right now." *Id.*

Plaintiff's employment was terminated on December 10, 2001. (Memo in Support of Defendant's Motion to Dismiss, Page 5). Defendant claims that Plaintiff was terminated due to budgetary constraints and lack of work. *Id.* Plaintiff then filed another complaint with the SDHR on or about December 10, 2002, alleging that he was fired in retaliation for his complaints.

(Amended Complaint, Exhibit K). His complaint is pending before the SDHR; no determination has not yet been rendered, *Id.*, and apparently he does not have a right to sue letter in respect of his retaliation complaint.

*Additional Information*

Plaintiff attaches a page entitled "Additional Information on Plaintiff's Mental Condition." to the Amended Complaint. This document chronicles issues that Plaintiff had at a former job (an unidentified sanitation department position from 1995–1996), more than four years prior to starting his position with County Defendant. He alleges that he suffered from "severe depression" during this time, including numbness in his head, sleep deprivation and a "nervous" condition. Plaintiff also alludes to visits with a doctor and a therapist. There is no documentary evidence of a diagnosis of depression, anxiety or post traumatic stress disorder. Plaintiff alleges that once he began working for County Defendant, his "head began to get numb again and depression reemerged" and he began to see a doctor and a therapist.

The Second Amended Complaint includes a page titled, "Limited Life Activities Suffered From Because Of Plaintiff's Illness." In this document, plaintiff claims that he suffers from a severe sleep disorder which, without medication, causes severe sleep deprivation, thus compounding his symptoms of depression and anxiety. Plaintiff claims that he was a musician/song writer who has not been able to write since becoming depressed. Plaintiff also claims that he cannot work overnight hours, that he has not had a relationship since being diagnosed with depression in 1996, and he cannot enjoy life.

### III. DISCUSSION

#### A. Standard for Motion to Dismiss.

■ Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper only where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999). The test is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998). The factual allegations in the complaint are presumed to be true, and all reasonable inferences are drawn in the plaintiffs favor. *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144 (2d Cir.2000).

■ Where a plaintiff proceeds pro se, a court must construe the complaint liberally and "interpret [it] to raise the strongest arguments that [it] suggest[s]." *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). *See also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding that pro se complaints should be "held to less stringent standards than formal pleadings drafted by lawyers"). However, "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir.1994) (quoting *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978)).

#### B. Disability Claim.

The Plaintiff alleges that he was discriminated against based on his "disability of depression, anxiety, and post-traumatic stress disorder." On May 15, 2003, I dismissed the Plaintiff's original ADA complaint without prejudice and I granted him leave to re-plead within 30 days. I told

plaintiff that any new complaint would be dismissed with prejudice if an Amended Complaint failed to satisfy the statutory requirement that it allege impairment of a major life activity.

After reviewing the Amended Complaint and the Second Amended Complaint, I am constrained to dismiss this action. I do so because the Plaintiff has not identified the impairment of a major life activity (as that term is interpreted in the law) due to his alleged disability.

## A. Prima Facie Case.

The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–70 (2d Cir.1998). To establish a prima facie case under the ADA, the plaintiff must assert (1) he is disabled within the meaning of the ADA; (2) that he is capable of performing the essential functions of his job with or without reasonable accommodation, and (3) that he was treated in a discriminatory manner by his employer on account of his actual or perceived disability. *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 383 (2d Cir. 1996).

## B. Definition Of Disability Within The ADA.

In order to show that he has a disability, the Plaintiff must demonstrate that he (1) has a physical or mental impairment that substantially limits his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. §§ 12102(2); *Schaefer v. State Ins. Fund*, 207 F.3d 139, 141 (2d Cir.2000); 29 C.F.R. §§ 1630.2(j).

■ The Supreme Court has articulated a three-step test for determining whether a plaintiff has a disability under the first subsection of the ADA's definition. *See Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998). First,

the court must determine whether the plaintiff suffers from a physical or mental impairment. *Id.* Second, it must "identif[y] the life activity" upon which the plaintiff relied and "determine[ ] whether it constitutes a major life activity under the ADA." *Id.* Third, it must inquire whether the plaintiff's impairment "substantially limited" a major life activity identified in step two. *Id.*

### 1. Impairment.

■ Depression is considered a physical or mental impairment under the ADA. The Department of Health, Education and Welfare (HEW) issued the first regulations interpreting the Rehabilitation Act in 1977. *Bragdon*, 118 S.Ct. at 2205. The HEW regulations issued by the Department of Health and Human Services, define "physical or mental impairment" to mean:

> (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculo-skeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or

> (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

45 CFR §§ 84.3(j)(2)(i) (1997). Clearly, depression falls under the term "mental or psychological disorder."

Here, the plaintiff alleges that he was "diagnosed" with depression in 1996 (Paragraph 3 of Limited Life Activity List). Plaintiff also alleges that he suffers from anxiety and post traumatic stress disorder.

■ However, while depression can qualify as a "mental impairment" under

the ADA, "a medical diagnosis of depression is not the 'sin qua non' of having an ADA disability." *Menes v. CUNY*, 92 F.Supp.2d 294, 304 (S.D.N.Y.2000). "As with a physical impairment, a 'mental impairment' does not rise to the level of a 'disability', unless such an impairment substantially limits a major life activity." *Id.*

## 2. Major Life Activities.

The second step in the analysis is to identify the life activities affected by the impairment and to determine whether those activities are "major" life activities under the ADA. *Bragdon v. Abbott*, 118 S.Ct. at 2202. The regulations define major life activities as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i). The Supreme Court has noted that this list is illustrative, and not exhaustive. *Bragdon*, 118 S.Ct. at 2205. In fact, this Circuit has previously included sleeping, sitting, standing, lifting and reaching as life activities. *Colwell, et al v. Suffolk County Police Department, et al*, 158 F.3d 635, 642 (2d Cir.1998) (Plaintiffs claimed they had lower back injuries, which rendered them physically disabled. Court reversed the lower court's order denying appellant's motion for a judgment as a matter of law, because the evidence at trial was insufficient to support the jury's finding that appellee police officers were disabled within the meaning of the ADA.)

The affected life activities upon which Mr. Dean relies in supporting his claim of having a disability are his inability to work, his inability to sleep, and his inability to have a relationship.

 In order to determine whether a particular activity is a "major life activity" we ask whether that activity is a significant one within the contemplation of the ADA, rather than whether that activity is important to a particular plaintiff. *Col-*

*well*, 158 F.3d at 642. Clearly, in listing working and sleeping, Mr. Dean has identified significant life activities. However, while Plaintiff alleges that he has not had a relationship since 1996, this is a very broad and general statement and cannot be deemed "life activities" within the meaning of the ADA. He has not alleged that he has been denied the ability to reproduce and to bear children, which does constitute a "major life activity" under the ADA. *Bragdon*, 524 U.S. at 639, 118 S.Ct. 2196.

## 3. Substantial Limitation.

As the court reiterated in *Bragdon* the last step in determining whether Plaintiff has a disability under the first subsection of the ADA's definition is to determine whether the plaintiff has alleged that his impairment *substantially limits* the life activities that are properly deemed major. *Bragdon*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540. In *Sutton v. United Air Lines, Inc.*, the Supreme Court dismissed the plaintiffs' ADA claim for failure to state a claim, as the court held that the plaintiffs were not substantially limited in any major life activity and thus had not stated a claim that they were disabled within the meaning of the ADA. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 476, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (Plaintiffs had severe myopia, which was correctable with appropriate lenses and a person whose physical or mental impairment was corrected by some measures did not have an impairment that substantially limited a major life activity.)

### a. Inability To Work.

 Mr. Dean identifies his inability to work as a major life activity that was affected by his impairment. He specifically mentions his inability to work night shifts, and his inability to write song lyrics.

However, as the Second Circuit found in *Heilweil v. Mount Sinai Hospital,* "an impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil v. Mount Sinai,* 32 F.3d 718, 723 (2d Cir.1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995). The applicable regulation, 29 C.F.R. § 1630.2(j)(3)(i), provides: "With respect to the major life activity of working, the term 'substantially limits' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Wernick v. Fed. Reserve Bank of N.Y.,* 91 F.3d 379, 384 (2d Cir.1996).

■ The allegation that the Plaintiff cannot work overnight hours does not rise to the level of substantial impairment. It is, of course, an impairment, but it is not substantial, since plaintiff can still work. Indeed, the job that the Plaintiff had with the County did not require him to work overnight hours. As long as Plaintiff can work during the day, he is not substantially limited in his ability to work.

■ As to his inability to write song lyrics, Plaintiff only makes a vague reference to being a musician and songwriter. He alleges in his "Additional Information on Plaintiff's Mental Condition" that he has not been able to write since 1996. However, "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3).

**b. Inability To Sleep.**

■ Plaintiff also claims that he suffers from a severe sleep disorder, and that without medication, Plaintiff has severe sleep deprivation. As the court stated in *Colwell,* "Difficulty sleeping is extremely widespread." *Colwell,* 158 F.3d. at 644. Plaintiff has not alleged that his affliction is any worse than is suffered by a large portion of the nation's population. *Id.* He has failed to allege that the degree of limitation he suffers is substantial. Moreover, there is no indication that Plaintiff actually suffered from these alleged sleep disorders at the time when he was working for the County Defendant.

The Amended Complaint and the Second Amended Complaint, read together, fail to allege sufficient facts to show that the plaintiff has a record of an impairment that substantially limits his ability to perform a major life activity, or that he was regarded as having such an impairment, as required by the remaining subsections of the ADA definition of disability.

■ Although it would be enough to allege that Plaintiff was regarded as having a disability, Plaintiff did not make this allegation. In fact, there is no allegation that Westchester County even knew of his disability. Plaintiff claims that his co-workers referred to him as "retarded" and "a little retarded." Plaintiff also claims that upon an interview for employment with Westchester County P.R.C., Ilene Spring asked him why with his background, he was not working. The Plaintiff claims that he replied, "I came down with this depression crap." However, Ilene Spring is not one of the workers whom the Plaintiff claims discriminated against him, and there is no allegation that she told anyone else about plaintiff's remark.[3]

---

**3.** In fact, Ms. Springs, who worked as the Program Administrator for the "Advance Through Parks" program—a program that integrates individuals from public assistance into the Parks Department—is actually the person who hired him and placed him.

This is the only mention that the Plaintiff makes of his alleged disability to anyone connected to his employment with the County Defendant. This is not enough to meet the pleading requirements for an ADA suit.

Because plaintiff has failed in his second attempt to allege sufficient facts to make out a claim of disability discrimination, his Amended Complaint/Second Amended Complaint is/are dismissed with prejudice.[4]

### C. Rule 11(a) Of The Federal Rules Of Civil Procedure.

 Defendant claims that Plaintiff's Amended Complaint should be stricken pursuant to Rule 11(a) of the Federal Rules of Civil Procedure, which requires that all pleadings, motions or other papers be signed for certification purposes, and that an unsigned submission be stricken unless it is signed promptly once the error is called to the attention of the pleader or movant. Defendant claims that the Amended Complaint was not signed when served upon Defendant. Defendant claims that on June 11, 2003, the County advised Plaintiff via telephone of his failure to sign the Amended Complaint and the requirement that he do so. Moreover, County for Defendant sent Plaintiff a letter setting out the requirement contained in Rule 11(a) and reminding Plaintiff that the Amended Complaint needed to be filed with the Court.

This Court will not mandate dismissal of the Amended Complaint for Plaintiff's failure to sign. The dismissal of a pro se pleading for failure to sign is inappropriate due to the great flexibility accorded a pro se litigant, as opposed to a pleading drafted by an attorney. *Montes v. Scully,* 1993 WL 372266 (E.D.N.Y.) (*cit-*

*ing Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

### IV. CONCLUSION.

For the reasons set forth above, Defendant's motion to dismiss is granted, with prejudice.

---

[4] I express no opinion whatever about whether plaintiff will be able to plead a claim sounding in retaliatory discharge should he receive his right-to-sue letter. That matter is not properly before me.