**Rosalind KRASNER, Plaintiff,**

v.

**The EPISCOPAL DIOCESE OF LONG ISLAND, Church of the Advent, Jeffrey Krantz, Reverand (sued in his individual capacity pursuant to N.Y. Executive Law sec. 290 et seq.), Ken Sybesma (sued in his individual capacity pursuant to N.Y. Executive Law sec. 290 et. seq.), Defendants.**

**No. 03 CV 6253(ADS)(MLO).**

United States District Court,
E.D. New York.

Aug. 9, 2004.

Scott Michael Mishkin, Esq., Islandia, NY, for Plaintiff.

Lynch & Lynch by Brian M. Hussey, Esq., Mineola, NY, for Defendant The Episcopal Diocese of Long Island.

Law Offices of Frederick K. Brewington, Hempstead, NY, for Defendants Church of the Advent, Jeffrey Krantz, and Ken Sybesma.

**MEMORANDUM OF DECISION AND ORDER**

SPATT, District Judge.

This case involves claims by the plaintiff Rosalind Krasner ("Krasner" or the "plain-

tiff") of sexual harassment and hostile work environment against The Episcopal Diocese of Long Island ("Diocese"), Church of the Advent ("Church"), Reverend Jeffrey Krantz (Krantz"), and Reverend Ken Sybesma ("Sybesma") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") and New York's Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYHRL"). Presently before the Court are the following two motions: (1) a motion by the defendant Diocese to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."); and (2) a cross-motion by the plaintiff Krasner for leave to file an amended complaint pursuant to Fed.R.Civ.P. 15(a).

## I. BACKGROUND

The following facts are taken from the complaint, which the Court construes as true for the purpose of deciding the Rule 12(b)(6) motion. On September 13, 1993, the Church hired the plaintiff to operate the parish office. Her responsibilities include maintaining finances, accounting of incoming money, banking deposits, managing financial reports, cutting payroll checks, paying monthly bills, scheduling Church and community functions at the parish hall, addressing parishioners telephone inquiries, and preparing bulletins. In addition to these responsibilities, the plaintiff works closely with many parishioners and their families for baptisms, funerals, weddings, and other services.

On or about December 22, 1996, Krantz took over as Reverend for the Church and became the plaintiff's immediate supervisor. On April 15, 2002, Krantz handed the plaintiff a floppy disk to print a letter from the disk. When the plaintiff opened the disk, she discovered that it contained pornographic images. Krasner asked Krantz why he gave her a disk with pornographic images, to which he responded, "What did you think?" The plaintiff told him that his behavior was unacceptable.

According to the plaintiff, after she confronted Krantz, he began to increase his supervision over her, ridicule her in front of others, and accuse her of incompetency. In the complaint, the plaintiff describes a litany of incidents in which Krantz humiliated and verbally abused the plaintiff to attempt to force her to leave her position at the Church. In one such instance, the plaintiff states that, in April 2002, Krantz became "furious" with her because he thought that the plaintiff was processing Sunday bulletin inserts too early. Krasner informed him that he was frightening and worrying her. He responded, "You had better be worried."

On April 30, 2002, the plaintiff was sick, out of work and under the care of her treating physician. During that time, the plaintiff, her mother, and her nurse kept Krantz apprised of her health status. Krantz placed a letter in her mailbox questioning her illness and requested that she respond to his letter. He warned her that, if she did not return to work, she would be fired. When the plaintiff returned to work, she handed a response in writing to Krantz, at which time he threw her letter into a trash can and stated that he did not care what she had to say.

In another situation, in an attempt to embarrass the plaintiff, Krantz sent a letter to the entire congregation advising them that he was "short-handed" and that he was unable to send out a certain letter for a festival. Krasner also claims that Krantz "confronted" the plaintiff about incorrect financial statements which she did not prepare. In another situation, Krantz became furious with the plaintiff because she did not inspect a van that was going to be used by the Church. In addition, Krantz blamed the plaintiff for losing two of his palm pilots and insinuated that she was responsible for losing two of his cell

phones. Krantz, in front of several individuals, also blamed the plaintiff for losing a donation check in the amount of $25,000.

With regard to Reverend Sybesma, who also worked for the Church, the plaintiff claims that he began to sexually harass her. According to the plaintiff, on several occasions, when the plaintiff was away from her office, she returned to find Sybesma in her office looking at pictures of nude men on her computer. Furthermore, the plaintiff claims that Sybesma would often masturbate at her desk while viewing the pornographic images. According to the plaintiff, she complained to Krantz about Sybesma's behavior, but he did nothing to stop it.

Finally, on April 15, 2002, the plaintiff reported the actions of Krantz and Sybesma to Linda Haye, the office administrator of St. Peter's Episcopal Church. Thereafter, in June 2002, the plaintiff requested permission to take a thirty day leave of absence to help take care of her mother who was undergoing two major abdominal surgeries. Krantz denied her request. In October 2002, Krantz wrote a letter for the Church's November newsletter that was sent to the entire congregation. Without specifically referring to her name, the letter stated that the plaintiff was an "ungrateful" employee. According to the plaintiff, she knew that Krantz was referring to her because of her request for a leave of absence. The plaintiff continued to complain to Haye about the individual defendants.

On October 28, 2002, Haye recommended that the plaintiff contact Father Joel Harvey ("Father Harvey"), the head of the Long Island Diocese Response Team. On November 5, 2002, the plaintiff spoke to Father Harvey, and he advised her to file a formal complaint with him. Father Harvey further informed her that the complaint would be kept confidential and that he would arrange for a meeting with the Response Team to hear her complaint.

On December 3, 2002, the plaintiff, along with her representative Susan Avellino, met with the Response Team and reported the incidents with Krantz and Sybesma. The Response Team "threatened" that if she commenced a legal action against Krantz or Sybesma, Krantz would sue her. The Response Team determined that the plaintiff and Krantz should not work together until further notice. On December 6, 2002, the Response Team showed Krantz the transcript of the December 3, 2002 meeting.

On December 8, 2002, the plaintiff telephoned Father Harvey and asked him whether she could return to work. Two days later, the plaintiff went to work and decided that if she saw Krantz's car, she would leave, but because his car was not in the parking lot, she remained at work. That same day, Father Harvey telephoned the plaintiff to advise her that Krantz's response at the December 6, 2002 meeting was "contrite and sad" and that Krantz agreed to apologize to the plaintiff. The Response Team proposed that Krantz and the plaintiff work at separate time and not be in the same room without supervision. The plaintiff was further advised that the Bishop was to review her sexual harassment complaints.

On December 18, 2002, Father Harvey again telephoned the plaintiff. He informed her that Krantz was inquiring as to whether the plaintiff had spoken to the Church vestry members about what had transpired and whether the plaintiff would accept his apology. Krasner responded "no" to both inquiries. Because the plaintiff was upset about what had happened with Krantz and Sybesma, Father Harvey

suggested that the plaintiff meet with a therapist affiliated with the Church.

On December 21, 2002, Krantz informed the plaintiff via email that he would be in the office Christmas week and advised her not to come into work during that time. The plaintiff alleges that she did not read the email and that, when she went to work, she discovered that Krantz was already there. The plaintiff further alleges that Krantz apologized to the plaintiff and informed her that he was participating in a twelve step sexual abuse program. Krantz also advised the plaintiff that he was going to seek counseling and that, based on the Bishop's direction, he was entering an out-of-state rehabilitation program.

On January 8, 2003, Krantz admitted to the plaintiff that the Diocese placed a filter on his computer to prevent him from downloading pornography. With a smirk on his face, Krantz stated this would "keep him in line, and try to make him a good boy." On January 16, 2003, the plaintiff wrote a letter to Father Harvey to advise him that Krantz was in breach of his agreement and that Krantz cut her yearly salary to $12,000 per year from $30,500.

In addition, at a May 20, 2003 meeting, Krantz announced that any staff member who did not work a forty hour week would have their vacation time reduced. Krasner claims that this announcement was directed at her because she had always worked less than forty hours each week. Krantz said to her, "you'll probably have to quit now because you won't be able to afford your mortgage." As a result of Krantz's implementation of the new policy, the plaintiff's vacation time was cut down by one week. Krasner claims that the Church, the Diocese, Krantz, and Sybesma created a hostile work environment to force her to quit her position.

## II. DISCUSSION

### A. The Motion by the Diocese to Dismiss the Complaint

In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), the Court should dismiss the complaint only if it appears beyond doubt that the facts alleged in the complaint would not entitle the plaintiff to relief. *King v. Simpson*, 189 F.3d 284, 287 (2nd Cir.1999); *see also, Bernheim v. Litt*, 79 F.3d 318, 321 (2nd Cir.1996). The Court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 138 (2nd Cir. 1999); *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2nd Cir.1997). When deciding a motion to dismiss for failure to state a claim, the Court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2nd Cir.1991). In addition, the issue before the Court is not whether the plaintiff's claim will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2nd Cir.1995).

The plaintiff brings this action pursuant to Title VII and the NYHRL. Title VII prohibits discrimination based on race, color, religion, sex, or national origin by an "employer." 42 U.S.C. § 2000e–2. An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). An

"employee" is "an individual employed by an employer." 42 U.S.C. § 2000e(f). To establish that the plaintiff is an "employee" within the definition of Title VII, she must first show she was "hired by the putative employer." *United States v. City of New York, et al.,* 359 F.3d 83, 92 (2d Cir.2004). In addition to hiring, "the question of whether someone is or is not an employee under Title VII usually turns on whether he or she has received direct or indirect remuneration from the alleged employer." *York v. Ass'n of the Bar,* 286 F.3d 122, 125–26 (2d Cir.2002) (quoting *Pietras . v. Bd. of Fire Comm'rs of the Farmingville Fire Dist.,* 180 F.3d 468, 473 (2d Cir.1999)). The remuneration may be in the form of a salary or consist of "substantial benefits not merely incidental to the activity performed." *Id.* at 126.

■ The Diocese contends that the plaintiff is unable to maintain a Title VII action against it because it is not an employer within the meaning of Title VII. The Court agrees. The complaint does not allege that the Diocese is her employer or even that an employment relationship exists between it and the plaintiff or to any other party in this action. Thus, the complaint must be dismissed as to the Diocese.

The plaintiff also asserts claims pursuant to N.Y. Exec. Law § 296(1)(e). The NYHRL provides, in relevant part, that "it shall be unlawful discriminatory practice . . . for an employer . . . because of the age, race, creed, color, national origin, sex . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296. In deciding a motion to dismiss, the Court considers the claims under the New York Human Rights Laws in tandem with Title VII claims. *See, e.g., Horvath v. Am. Tissue Corp.,* 210

F.Supp.2d 189, 192 (E.D.N.Y.2002); *Kaible v. U.S. Computer Group, Inc.,* 27 F.Supp.2d 373, 377 (E.D.N.Y.1998). Because the plaintiff has not alleged that the Diocese is her employer under Title VII, her claims against the Diocese under NYSHRL must also be dismissed for similar reasons.

**B. The Cross–Motion by the Plaintiff for Leave to file an Amended Complaint**

■ As a cross-motion, the plaintiff moves for leave to file an amended complaint pursuant to Rule 15(a). This Rule permits a party to amend their "pleading once as a matter of course at any time before a responsive pleading is served. . . ." Fed.R.Civ.P. 15(a). A motion to dismiss is not a responsive pleading under Rule 15(a). *Thompson v. Carter,* 284 F.3d 411, 416 n. 2 (2d Cir.2002). As such, given that no responsive pleading has been served in this case, the plaintiff's cross-motion for permission to amend the complaint is unnecessary.

**III. CONCLUSION**

Based on the foregoing, it is hereby

**ORDERED,** that the Diocese's motion to dismiss the complaint against it is **GRANTED**; and it is further

**ORDERED,** that the plaintiff's cross-motion for leave to file an amended complaint is unnecessary given the procedural posture of this case; and it is further

**ORDERED,** that the plaintiff is directed to file her amended complaint within 30 days of the date of this Order; and it is further

**ORDERED,** that the Clerk of the Court is directed to amend the caption as follow:

ROSALIND KRASNER, Plaintiff,

against

CHURCH OF THE ADVENT, JEF-
FREY KRANTZ, Reverand (sued in
his individual capacity pursuant to
N.Y. Executive Law sec. 290 et seq.),
KEN SYBESMA (sued in his individ-
ual capacity pursuant to N.Y. Execu-
tive Law sec. 290 et. seq.), Defen-
dants.

**SO ORDERED.**