Darren AQUINO, Stephanie Kuka–Aquino, and Anthony Passaro, with the matter against Grant Wilfely Casting Agency Only, Plaintiffs,

v.

PRUDENTIAL LIFE AND CASUALTY INSURANCE COMPANY, Dick Furnari—Broker; Millennium Hyundai; Hyundai Motor Finance Company; NYS Dept. of Motor Vehicles—Nassau County, Judge Lisa Confusione; NYS Insurance Department; Exxon/Mobile; J.C. Penny; Macy's; Capital One (3 accounts); Bankfirst; Household Bank; NYS Family Court—County of Queens; Deborah D'Amico aka Deborah Boswel; State of Texas, County of Harris; NYS Supreme Court, County of Nassau, Judge G. O'Connell, Chief Judge of NYS Supreme Court Nassau County; Social Security Administration; First West Mortgage Company; General Assurance Corp.; Allstate Insurance Company, Myron Hiller—

Broker; D–Cap Insurance; State Attorney General Elliot Spitzer; U.S. Attorney General; Grant Wilfely Casting Agency; Grant Wilfely, Anna Manascalco, and Associates—John Doe, Jane Doe; Steven Rubin, Esq.; NBC, Judge Judy; Verizon; New England Securities, Doug Sheppard, Defendants.

No. 03 CV 5987(ADS)(MLO).

United States District Court,
E.D. New York.

March 1, 2005.

Darren Aquino, West Hempstead, NY, Pro Se Plaintiff.

Stephanie Kuka–Aquino, West Hempstead, NY, Pro Se Plaintiff.

D'Amato & Lynch, by Kevin Joseph Windels, Esq., of Counsel, New York, NY, for the defendant Doug Sheppard.

McCarter & English, LLP, by Andrew O. Bunn, Esq., of Counsel, Moran & D'Arcambal, by Michelle J. D'Arcambal, Esq., of Counsel, New York, NY, Co-counsel for the defendant New England Securities.

Leahey & Johnson, P.C., by Peter James Johnson, Esq., of Counsel, New York, NY, for the defendant Verizon.

NBC Universal, Inc., by Elisabeth C. Yap, Esq., of Counsel, New York, NY, for the defendants NBC and Judge Judy.

Babchik & Young LLP, by Jordan Sklar, Esq., of Counsel, White Plains, NY, for the defendant Steven Rubin.

Gair, Gair, Conason, Steigman & MacKauf, by Robert L. Conason, Esq., of Counsel, New York, NY, for the defendants Grant Wilfely, Grant Wilfely Casting Agency, and Anna Manascalco.

United States Attorneys Office, Eastern District of New York, by Robert B. Kambic, Assistant United States Attorney, of Counsel, Central Islip, NY, for the defendants U.S. Attorney General and Social Security Administration.

Office of the Attorney General New York State, by Valerie Singleton, Assistant Attorney General, of Counsel, Mineola, NY, for the defendants State Attorney General Eliot Spitzer, Judge G. O'Connell, New York State Supreme Court, New York State Insurance Department, and New York State Department of Motor Vehicles.

Lustig & Brown LLP, by Stephen Carson Cunningham, Esq., of Counsel, New York, NY, for the defendant Broker Myron Hiller.

Saiber Schlesinger Satz & Goldstein, LLC, by Phoebe S. Sorial, Esq., of Counsel, Newark, NJ, for the defendant Allstate Insurance Company.

Silverman, Perlstein & Acampora, LLP, by Robert J. Ansell, Esq., of Counsel, Jericho, NY, for the defendant First West Mortgage Company.

Office of the Attorney General State of Texas, General Litigation Division, by Robin M. Kriza, Assistant Attorney General, Capitol Station, TX, for the State of Texas, County of Harris.

Deborah D'Amico, College Point, NY, Defendant Pro Se.

Cahill Gordon & Reindel LLP, by Howard G. Sloane, Esq., of Counsel, New York, NY, for the defendant Household Bank.

Wilmer, Cutler & Pickering, by Michael Hun Park, Esq., of Counsel, New York, NY, for the defendant Bankfirst.

Morgan, Brown & Joy, LLP, by Laura M. Raitsy, Esq., of Counsel, Boston, MA, for the defendant Macy's.

Wilson Elser Moskowitz Edelmann & Dicker LLP, by David Larry Tillem, Esq., Ami Shah, Esq., Fred N. Knopf, Esq., Arthur Bernard Colligan, Jr., Esq., of Counsel, White Plains, NY, for the defendants Hyundai Motor Finance Company, and Prudential Life and Casualty Insurance Company.

Grunwald & Seman PC, by Karl C. Seman, Esq., of Counsel, Garden City, NY, for the defendant Milennium Hyundai.

Abrams Garfinkel Margolis Bergson, LLP, by Barry G. Margolis, Esq., of Counsel, New York, NY, for the defendant Broker Dick Furnari.

No Appearance for Judge Lisa Confusione, D–Cap Insurance, General Assurance Corp., Capitol One, J.C. Penney, Exxon/Mobil, and Anthony Passaro.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this action Darren Aquino, Stephanie Kulko–Aquino, and Anthony Passaro (collectively the "Plaintiffs") bring the phrase "sue everyone" to a new level. The amended complaint lists a myriad of well-known public individuals and entities that have allegedly discriminated against the Plaintiffs. In sum, the Plaintiffs claim that they are "qualified individuals with disabilities" and thus are "entitled to goods, services, protections, equal and fair treatment, etc."

The Plaintiffs filed this action under the Americans with Disabilities Act and other federal laws against thirty-eight defendants who are for the most part unrelated. The amended complaint list the following groups of defendants under the same factual allegations: (1) Prudential Life Insurance and Casualty Insurance Company and their insurance broker, Dick Furnai, General Assurance Company, Allstate Insurance Company and their broker Myron Hiller, and D–Cap Insurance Brokers; (2) J.C. Penny, Macy's, Capitol One, Household Bank, Bankfirst, Exxon/Mobil, and Hyundai Finance Company; (3) Millenium Hyundai; (4) the New York State Department of Motor Vehicles, Judge Lisa Confusione, the New York State Family Court, the New York State Supreme Court, County of Nassau, and the Honorable Geoffrey J. O'Connell; (5) Deborah D'Amico (6) the State of Texas, Harris County; (7) the Social Security Administration; (8) First West Mortgage Company; (9) NBC and Judge Judith Sheindlin of the NBC television show Judge Judy; (10) Grant Wilfely, Anna Manascalco, and Associates, and the Grant Wilfely Casting Agency; (11) Steven Rubin, Esq.; (12) Verizon, Inc.; and (13) New England Securities and

Doug Shepord (collectively the "Defendants").

Most of the defendants have moved to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court will note where parties have moved for dismissal on other grounds. Even though a few defendants have not moved for dismissal, the Court will dismiss the claims against them sua sponte, if the claim appears frivolous on its face. The Plaintiffs have not formally responded to any of the motions made by the various defendants. Instead, they have filed numerous narrative statements with the Court. These ex-parte submissions have included multiple faxes exceeding more than a total of 80 pages and have been partially unreadable and incoherent. The Court will now address the motion by each group of defendants.

## DISCUSSION

### I. Motion to Dismiss Standard

In deciding a motion to dismiss under Rule 12(b)(6), a district court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Desiderio v. National Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 202 (2d Cir.1999). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375,

378 (2d Cir.1995)). "In addition to the forgoing standard governing Rule 12(b)(6) motions, the Court must be mindful of the relevant rules of pleading. In general, a plaintiff need only provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R.Civ.P. 8(a)(2), and 'all pleadings shall be construed as to do substantial justice,' Fed.R.Civ.P. 8(f)." *Protter v. Nathan's Famous Sys., Inc.,* 904 F.Supp. 101, 105 (E.D.N.Y.1995).

The Court is also mindful that the plaintiffs are proceeding *pro se* and that their submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers....' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)). Indeed, district courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law....' " *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

A district court may dismiss a claim *sua sponte* if the court believes it to be frivolous. *See Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 363–64 (2d Cir.2000) ("District courts are especially likely to be exposed to frivolous actions and, thus, have a great[ ] need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources."). A claim "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490

U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). In this case, in the interest of judicial economy, the Court will examine whether the Plaintiffs claims are meritorious, and thereby warrant forcing a hodgepodge of defendants to litigate an action that may be frivolous.

## II. The Americans With Disabilities Act

The Americans With Disabilities Act ("ADA" or the "Act") was enacted, in part, to assist in remedying the problems related to access by persons with disabilities to public facilities, employment, and transportation services. 42 U.S.C. §§ 12101–213. Title II of the Act proscribes discrimination against the disabled regarding access to public services. *Id.* § 12132 ("No qualified individual with a disability shall ... be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). Title III of the ADA proscribes discrimination against the disabled in public accommodations. Id. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of public accommodation.").

■ The Rehabilitation Act of 1973, a predecessor to the ADA, was the original vehicle designed to address disability discrimination and "is narrower than the ADA's in that its provisions apply only to programs receiving federal financial assistance." *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 85, 2004 U.S.App. LEXIS 19474, *13–14 (2d Cir.2004); 29 U.S.C. § 794(a) (2000). Section 504 of the Rehabilitation Act states:

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

■ Together, the Rehabilitation Act and the ADA prohibit discrimination against qualified disabled individuals by requiring that they receive "reasonable accommodations" that allow them to access and partake in public services and public accommodations. *Powell,* 364 F.3d at 85, 2004 U.S.App. LEXIS 19474, at *14; *see Henrietta D. v. Bloomberg,* 331 F.3d 261, 273 (2d Cir.2003); *Felix v. New York City Transit Auth.,* 324 F.3d 102, 104 (2d Cir. 2003).

■ In order to state a prima facie case under either of these Acts, a plaintiff must demonstrate (1) that he or she is a "qualified individual" with a disability; (2) that the defendants are subject to one of the Acts; and (3) that he or she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disability." *Henrietta D.,* 331 F.3d at 272.

First, a person is considered a "qualified individual" with a disability under the Act if that individual (1) has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (2) has "a record of such an impairment;" or (3) is a person "regarded as having such an impairment." 42 U.S.C. § 12102(2).

Second, the Act states that the following private entities are considered public ac-

commodations subject to the ADA if the operations of such entities affect commerce—

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

*Id.* § 12181(7).

Finally, a plaintiff must plead that he or she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disability." *Henrietta D.*, 331 F.3d at 272. "Quite simply, the demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation." *Id.* at 277. In addition, an ADA plaintiff must demonstrate that a denial of benefits occurred "by reason of ... disability," or in other words, the plaintiff must prove that the denial is "because of" the disability. *See Olmstead v. L.C. by Zimring*, 527 U.S. 581, 601, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) (Kennedy, J., concurring).

It is within this framework the Court will analyze the Plaintiffs claims against the defendants. As an initial matter the Court notes that the Plaintiffs' complaint barely alleges that the Plaintiff is a "qualified individual" with a disability. The complaint mentions in passing that Darren Aquino has dyslexia and a number of other unspecified disabilities.

### III. Claims against the Insurance Providers

The amended complaint states that the Plaintiffs had multiple insurance policies with Prudential Life and Casualty Insurance Company,("Prudential"), General Assurance Company ("General Assurance"), Allstate Insurance Company ("Allstate"), and D–Cap Insurance Brokers ("D–Cap") (collectively, the "Insurance Providers"), including whole life policies for herself and

her children, homeowners insurance with a disability/loss of employment clause and automobile insurance.

## A. As to Prudential

■ The amended complaint states that Ms. Kuka–Aquino requested "help" from plaintiff Darren Aquino in "dealing with her accounts" due to her "mental and physical trauma." In the Spring of 2000, one of the plaintiffs allegedly notified Ms. Kuka–Aquino's insurance broker, Dick Funari ("Funari") of a pending divorce action between Ms. Kuka–Aquino, then Stephanie Margiotta, and Stephen Margiotta. The Plaintiff allegedly requested that Funari notify the plaintiff if Mr. Margiotta sought to "take any monies from the personal insurance accounts" of Ms. Kuka–Aquino or her children. Funari allegedly did not provide such notification and Mr. Margiotta allegedly took monies from the insurance policies of Ms. Kuka–Aquino's children. Funari allegedly did not provide such notification because he "was a personal friend" of Mr. Margiotta.

Based on this factual predicate, the Plaintiffs allege that Prudential and Funari, violated Title III of the ADA by failing to: (1) activate disability insurance for the personal life and mortgage payments of Ms. Kuka–Aquino after she gave notice of a disability occurring on December 9, 2002; (2) acknowledge name change as a result of Judgment of Divorce; (3) change the title/ownership and beneficiary of her children's insurance policies over to Stephanie Kuka, also ordered in the Judgment of Divorce. In compensation for such alleged failings, Plaintiff Stephanie Kuka–Aquino collectively seeks $1,000,000 in damages for defamation and discrimination.

The Court is compelled to stretch its imagination to determine how these actions by Prudential had anything to do with the Plaintiffs' alleged disability. First, the complaint fails to state what disability, if any, Stephanie Kuka–Aquino has. In order to establish a prima facie violation under the ADA, plaintiffs must adequately plead under the Act that they are qualified individuals with a disability. The Plaintiffs merely allege that they are "recognized as qualified individuals with disabilities entitled to goods, services, protections, equal and fair treatment, etc., under 42 U.S.C. Sect. 504 of the 1973 Rehabilitations Act, and under the United States Constitution, specifically the 14th Amendment." The Plaintiffs' conclusory allegations are not sufficient to defeat this motion to dismiss.

Second, the Plaintiffs have not alleged that Prudential is a private entity subject to the provisions of the ADA. The ADA states that insurance offices are private entities subject to the ADA. The Second Circuit has stated that this "prohibition imposed on a place of public accommodation from discriminating against a disabled customer in the enjoyment of its goods and services appears to prohibit an insurance office from discriminatorily refusing to offer its policies to disabled persons, subject to the safe harbor provision of Section 501(c) of Title V." *Pallozzi v. Allstate Life Ins. Co.,* 198 F.3d 28, 31–32 (2d Cir.1999); *see Doe v. Mutual of Omaha Ins. Co.,* 179 F.3d 557, 559 (7th Cir.1999) (stating that Title III of the ADA prohibits an insurance company from refusing to sell an insurance policy to a disabled person by reason of the person's disability). The safe harbor provision in section 501(c) of the ADA states that the ADA does not "prohibit or restrict" the underwriting, classifying, or administering of risks consistent with state law, unless the alleged underwriting is a "subterfuge to evade" the ADA. 42 U.S.C. § 12201(c).

The Second Circuit also has held that a plaintiff asserting an ADA claim regarding the underwriting, classifying, or administering of risks "has the ... obligation to plead (and prove) that the insurance practice complained of is not consistent with state law or is being used as a 'subterfuge to evade the purposes' of Titles I and III of the Act." *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 36 (2d Cir.1999), amended, 204 F.3d 392 (2d Cir.2000). The Plaintiffs amended complaint fails to allege any violations of state law or that the complained of acts were used as a "subterfuge to evade the purposes" of the ADA.

Third, and most importantly, the Plaintiffs do not claim that Prudential's actions were on account of plaintiffs' alleged disabled status. Indeed, the Plaintiffs make no allegations whatsoever that the actions were based on any disabilities. The Court cannot surmise how the actions that the Plaintiffs complain of were caused by a failure of the defendants to provide reasonable accommodations as required under the ADA. The Plaintiffs' amended complaint fails to plead violations of any legal duties imposed by the ADA statute or regulations. Under Section 102(b)(5) of the Act, 42 U.S.C. § 12112(b)(5)(A), discrimination includes not making reasonable accommodations available to a qualified person with a disability. Under 28 C.F.R. 36.303, a place of public accommodation must take steps necessary to ensure that no individual with a disability is "excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 28 C.F.R. 36.303(a). "Auxiliary aids and services" are defined as:

(1) Qualified interpreters, notetakers, computer-aided transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments;

(2) Qualified readers, taped texts, audio recordings, Brailled materials, large print materials, or other effective methods of making visually delivered materials available to individuals with visual impairments;

(3) Acquisition or modification of equipment or devices; and

(4) Other similar services and actions.

*Id.*

The ADA does not require, as the Plaintiffs allege, that Prudential "activate disability insurance," "acknowledge name changes," "change ownership of policies," or "notify" the Plaintiff about the status of her children's insurance policies.

In failing to plead (1) that they are qualified individuals with a disability under the Act, (2) that Prudential is a private entity under the ADA, and (3) that the aggrieved of actions denied the Plaintiffs of reasonable accommodations because of a disability, the Plaintiffs have failed to make out a prima facie violation under Title III. Here, even construing the plaintiffs' claims in the complaint liberally, the Court finds that it is constrained to dismiss the complaint against Prudential for failure to state a claim upon which relief may be granted.

**B. As to General Assurance, D–Cap, and Allstate**

■ Similar to the allegations against Prudential, the Plaintiffs claim in a separate section of the complaint that the Insurance Providers (1) failed to communicate properly with the Plaintiff, Mr.

Aquino, regarding the status of his insurance policy; (2) failed to make an accommodation via telephone to make changes to the insurance policy; and (3) failed to credit his account status properly when insurance premium payments were made, thus causing his account to appear in arrears. As a result, Mr. Aquino's driver's license was suspended which caused undue physical and mental hardship; he was required to cancel many doctor appointments; and his mobility in everyday life was limited.

■ For substantially the same reasons as stated above, the Plaintiffs complaint must fail against the Insurance Providers. The Plaintiffs do not claim that the Insurance Providers refused to activate payments under the alleged insurance policies—or undertook any other action—on account of plaintiffs' alleged disabled status. Indeed, the Plaintiffs make no allegations whatsoever that the Insurance Providers acted on account of the Plaintiffs alleged disabilities. In addition, the Plaintiffs' amended complaint also fails to plead violations of any other legal duties imposed by the ADA statute or regulations. The ADA does not require owners and operators of public accommodations "to acknowledge disabilities," "to assist in filling out necessary forms," "to communicate appropriately," or "to notify [persons] . . . of [the] status of accounts." For these reasons, the complaint against the Insurance Providers is dismissed in its entirety.

### C. As to Dick Furnari

■ As to the claim against Dick Furnari, under Title III of the ADA an individual may only be liable if he or she " 'owns' 'operates' or 'leases' the public accommodation." *Coddington v. Adelphi Univ.*, 45 F.Supp.2d 211, 215 (E.D.N.Y. 1999). As stated above, the Plaintiffs have not sufficiently alleged that Prudential was

providing a "public accommodation" when it issued insurance policies to the Plaintiffs. As such, Dick Furnari's actions as Prudential's agent are not subject to Title III of the ADA with regard to the insurance policies. Therefore, the claims in the complaint against Dick Furnari are dismissed.

### D. As to Myron Hiller

The Amended Complaint as against Mr. Myron Heller, incorrectly sued herein as Myron Hiller–Broker, alleged that he acted as the agent for Allstate and committed the acts complained of as stated above. For the same reasons as previously stated with regard to Dick Furnari, the Plaintiffs have not sufficiently alleged that Allstate was providing a "public accommodation" when it issued insurance policies to the Plaintiffs. As such, any claim against Myron Heller must be dismissed for failure to state a claim.

### IV. As to the Claims Against the Creditors

■ The complaint states that the Plaintiffs had credit card accounts with J.C. Penny, Macy's, Capitol One, Household Bank, Bankfirst, Exxon/Mobil, Hyundai Finance Company (collectively the "Creditors"). The complaint alleges that these companies are "public entities" and that the Plaintiffs purchased disability and loss of employment insurance on each of the accounts and insurance policies. In connection with those accounts, it is alleged that the Creditors: (1) failed to activate the insurance; (2) failed to acknowledge the Plaintiffs' disabilities; (3) failed to assist the Plaintiffs in filling out forms or to take information over the telephone; (4) failed to communicate appropriately with the Plaintiffs; and (5) failed to notify plaintiffs in a timely manner of the status of their accounts. Based on these allega-

tions alone, the Plaintiffs claim that the Creditors violated title III of the ADA.

For substantially the same reasons as stated above, the Plaintiffs complaint must fail against the Creditors. The Plaintiffs do not claim that Creditors refused to activate payments under the alleged insurance program—or undertook any other action—on account of plaintiffs' alleged disabled status. Indeed, plaintiffs make no allegations whatsoever that the Creditors actions were based on any disabilities. In addition, the Plaintiffs' amended complaint also fails to plead violations of any other legal duties imposed by the ADA statute or regulations. The ADA does not require owners and operators of public accommodations "to acknowledge disabilities," "to assist in filling out necessary forms," "to communicate appropriately," or "to notify [persons] . . . of [the] status of accounts." For these reasons, the complaint against the Creditors is dismissed in its entirety.

## V. As to the Claims against First West Mortgage

In a short and conclusory statement, the Plaintiffs allege that First West Mortgage Company ("First West") "failed to communicate to [the] purchaser of [the] mortgage that PMI insurance was in existence." On this fact alone, the complaint asserts that First West violated the ADA.

This statement is insufficient to state a claim under the ADA. The Plaintiffs do not allege or even suggest the First West owns, leases, or operates a place of public accommodation as defined under the ADA. Furthermore, the Plaintiffs do not allege that First West discriminated against them because of their purported disability by denying them a service, privilege, or accommodation that is provided to the general public. Even viewed in the light most favorable to the Plaintiffs, no nexus can be drawn between the lone allegation and a claim for disability discrimination pursuant to the ADA. Therefore, the Plaintiffs' claim against First West must be dismissed for failure to state a claim upon which relief may be granted.

## VI. As to the New York State Defendants

Defendants New York State Attorney General Eliot Spitzer ("Attorney General Spitzer"), Justice Geoffrey J. O'Connell ("Judge O'Connell"), and New York State Department of Motor Vehicles ("DMV") (collectively the "State Defendants") move pursuant to Fed. R. Civ. P 12(b)(1) and (6) to dismiss the complaint. The plaintiff Darren Aquino claims that on January 18, 2004 the DMV suspended his driver's license without affording him an opportunity to be heard. Mr. Aquino alleges that he requested accommodations due to his multiple disabilities and limited physical mobility but that DMV ignored his requests and refused to grant him an adjournment of the hearing to a later date. He further alleges that Judge O'Connell (1) failed to give him direction as to how to proceed in his pro se case and (2) failed to provide him appropriate accommodations that would have assisted the Plaintiffs in a foreclosure process.

### A. Standard Under Rule 12(b)(1)

When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n. 6 (2d Cir.2001); *Antares Aircraft, L.P. v. Fed. Rep. of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130 (2d Cir.

1976). Under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint but will not draw inferences favorable to the party asserting jurisdiction. *See Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). Hearsay statements contained in the affidavits may not be considered. *See Kamen v. AT & T,* 791 F.2d 1006, 1011 (2d Cir.1986).

## B. Rooker–Feldman Doctrine

 To the extent that the Plaintiffs seek to challenge determinations that were made in the state court, this Court lacks subject matter jurisdiction to decide such a dispute under the Rooker–Feldman doctrine. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Under this doctrine, "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature," *Gentner v. Shulman,* 55 F.3d 87, 89 (2d Cir.1995), and "federal review, if any, can occur only by way of a certiorari petition to the Supreme Court," *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 197 (2d Cir.1996). "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir.1998).

 This doctrine also prohibits a district court's review of state court judgments to claims that are "inextricably intertwined" with a state court's determinations. *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002). A claim is inextricably intertwined with the state court judgment when "at a minimum, . . . a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), . . . [and] the claim . . . would be barred under the principles of preclusion." *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002) (internal quotations and citation omitted). In addition, a plaintiff cannot circumvent Rooker–Feldman by recasting her claim as a federal civil rights violation. *See Davidson v. Garry,* 956 F.Supp. 265, 268–69 (E.D.N.Y.1996).

There is no doubt that the Plaintiffs' claims under the ADA and for constitutional violations arise from his proceedings relating to his traffic ticket and mortgage foreclosure and could have been raised in state court. Despite the fact that the Plaintiffs' claims are cast in terms of civil rights violations, the Plaintiffs' purpose in filing this action in federal court is clearly to avoid the results of the state court rulings and merely demonstrates their dissatisfaction with the state court proceedings. *See Pal v. Garvey,* 1998 WL 427677, at * 1 (S.D.N.Y., July 29, 1998), 1998 U.S. Dist. LEXIS 11565, at *1 ("[D]ismissal warranted where complaint alleged state court exceeded its constitutional authority, made various evidentiary errors, deprived plaintiff of right to counsel, and deprived plaintiff of other unspecified rights under the Constitution and the Americans with Disabilities Act.").

Indeed, even if the actions taken by the state court were wrongful, as the Plaintiffs allege, the orders remains in full force and effect until they are reversed or modified by an appropriate state court. Put simply, the Plaintiffs cannot enter through the back door to evade the Rooker–Feldman doctrine in order to get into federal court. As such, this Court lacks subject matter jurisdiction over the plaintiff's claims against Justice Geoffrey J. O'Connell, the DMV, and the state courts in this case.

### C. As to Attorney General Elliot Spitzer

With respect to Attorney General Spitzer, other than his name appearing in the caption, he is not mentioned anywhere in the complaint. The Plaintiffs have not alleged that Attorney General Spitzer participated directly in the alleged constitutional violations. Nor have they claimed that Attorney General Spitzer was ever informed of the supposed violations and failed to act or even that he created a policy or custom that led to alleged violations of plaintiffs' constitutional rights. Finally, the Plaintiffs have not shown that Attorney General Spitzer in any way supervised those persons who allegedly violated plaintiffs' constitutional rights. Accordingly, as the Plaintiffs have made no factual allegations concerning the personal involvement of Attorney General Spitzer in any of the conduct alleged to have violated his constitutional rights, the Plaintiffs' claims against Attorney General Spitzer are hereby dismissed.

### VII. As to the State of Texas

■ The Plaintiffs' complaint names the State of Texas, Harris County, and alleges that they did not assist the Plaintiffs in a foreclosure. The Plaintiffs' amended complaint states that "[i]t does not have a process or component within the County, Court, or State, that assists persons with disabilities to be entitled to due process and fair and equal treatment ... because of the above, the plaintiffs suffered financial hardship when no assistance, nor accommodation, were made by the State ... to assist the plaintiffs in settling their dispute in an illegal foreclosure action. They refused to make effective communication over the telephone when late notice was given to plaintiffs by previous defendants." The Plaintiffs al-

lege that this violated Title III of the ADA.

Reading the amended complaint liberally, it appears that the Plaintiffs are seeking monetary damages against the State of Texas with regard to a foreclosure that occurred in New York because the State of Texas, Harris County, does not have an equitable process to assist disabled persons. It is unclear on the face of the complaint what relation, if any, the State of Texas had with the Plaintiffs foreclosure action that allegedly occurred in New York.

■ The Court finds that the plaintiffs' conclusory allegations relating to his apparent causes of action are "confused, ambiguous, vague [and] otherwise unintelligible [and] that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) (stating that "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial"); *see also* Fed.R.Civ.P. 8(a)(2) (requiring that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief....."). When a complaint fails to comply with Rule 8, a district court has the authority to dismiss a complaint. *Salahuddin*, 861 F.2d at 42. As such, the Court finds that dismissal under Rule 8 is warranted in this case regarding the claim against the State of Texas.

### VIII. The Federal Defendants

The defendants Social Security Administration ("SSA") and the United States Attorney General ("U.S. Attorney General") (collectively, "federal defendants") move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which

relief can be granted. The Plaintiffs allege claims in the amended complaint that purport to assert jurisdiction under the ADA.

According to the amended complaint, because Darren Aquino has filed several complaints against the SSA and due to his "standing" as a disability advocate, he claims that SSA retaliated against him by reducing his monthly Social Security benefits by $150 a month beginning in approximately October 2002. The Plaintiff further alleges that he was not provided accommodations for his disabilities as required by the ADA and state law. Finally, Aquino alleges that "cases now pending [before SSA] are being hindered or delayed or lost as an act of retaliation."

█ To the extent that the Plaintiffs' amended complaint alleges jurisdiction against SSA and the U.S. Attorney General under the ADA, such claim must fail for lack of jurisdiction. The ADA was intended to mandate and enforce elimination of discrimination against individuals with disabilities. 42 U.S.C. § 12101(b). The ADA proscribes certain listed discriminatory actions by covered entities in situations involving employment, public services, and public accommodations. The public entities that are defined as covered entities under the ADA are state or local governments and their instrumentalities. 42 U.S.C. § 12131(1). The United States and its agencies and employees are not covered entities under the ADA. *Cellular Phone Taskforce v. FCC*, 217 F.3d 72, 73 (2d Cir.2000) (holding that Title II of the ADA is not applicable to the federal government); *see also Kemer v. Johnson*, 900 F.Supp. 677, 681 (S.D.N.Y.1995), *aff'd*, 101 F.3d 683, 1996 WL 219402 (2d Cir.1996).

Accordingly, the Court lacks jurisdiction over the Plaintiffs claims because there is no statute under the ADA that confers jurisdiction over federal agencies. As such, the Plaintiffs claims against the Federal Defendants are dismissed.

## IX. As to the Claims against Steven Rubin, Esq.

█ In a short and incoherent statement, Mr. Aquino alleges a claim under the ADA against Steven Rubin, Esq. The allegations appear to relate to a time when Mr. Rubin represented Mr. Aquino in a criminal matter. The Plaintiff claims that Mr. Rubin failed to represent the Plaintiff as instructed; minimized the plaintiff's disabilities; collected fees without defending to the best of his ability; failed to instruct; failed to communicate; and failed to represent him.

Rule 8 of the Fed R. Civ. P. requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R.Civ.P. 8(a)(2). Each averment in the complaint must be "simple, concise, and direct." Fed.R.Civ.P. 8(e)(1). The Second Circuit has explained that:

> The function of pleadings under the Federal Rules is to give fair notice of the claim asserted. Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.

*Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir.1995) (internal quotations and citations omitted); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) (stating that "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial") (citations omitted).

The Plaintiffs' complaint with respect to Mr. Rubin fails to meet the requirements of Rule 8. It is unclear why the Plaintiff

believes he is entitled to relief under the ADA. The complaint does not allege whether the Plaintiff qualifies as an individual with a disability; whether the defendant Mr. Rubin is a proper defendant under the ADA; and fails to allege any specific action that Mr. Rubin took or failed to undertake with regard to reasonable accommodations or discrimination. Therefore, the complaint fails to meet the requirements under Rule 8 or Rule 12(b)(6).

 In addition, to the extent it appears that the Plaintiff seeks to bring an action for legal malpractice, the Court would lack subject matter jurisdiction over such a claim. Federal subject matter jurisdiction exists when a federal question is presented to the Court, *see* 28 U.S.C. § 1331, or the plaintiff and all of the defendants are citizens of different states and the amount in controversy exceeds $ 75,-000, *see* 28 U.S.C. § 1332. Where subject matter jurisdiction is lacking, the district court must dismiss the complaint without regard to the merits of the lawsuit. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir.1996). A claim for legal malpractice is a New York state claim that could only be brought in federal court if the parties were from different states or if there is a pending federal claim. As alleged in the complaint, both parties are residents of New York. Because the ADA claim is being dismissed for failure to state a claim, there is no pending federal question. Therefore, the Court lacks jurisdiction over the legal malpractice claim. The complaint is dismissed against the defendant Steven Rubin.

## X. Claims against Grant Wilfely Casting Agency and Employees

In conclusory fashion, the Plaintiff states:

That Grant Wilfely, Anna Manascalco, and Associates, and Grant Wilfely Casting Agency . . .

A) sexually harassed plaintiff, violating his civil rights.

B) caused financial hardship by purposely denying to represent plaintiff as of prior agreements from January 2002 when plaintiff would not succumb to his sexual requests.

C) filed false report of harassment causing plaintiff incarceration and unnecessary legal fees.

D) interfered with his acting and career opportunities by passing false and derogatory information to other casting agencies.

E) violated ADA.

Amended Complaint at 10.

 Even under the most liberal reading, the Plaintiffs complaint fails to state a claim under the ADA or Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e. To establish a prima facie case under the ADA or Title VII for employment discrimination, the Plaintiff must plead at a minimum that the action of the defendants were related to an employment relationship or a potential relationship between the plaintiff and the defendant. *Krasner v. Episcopal Diocese of Long Island*, 328 F.Supp.2d 367, 371 (E.D.N.Y. 2004). From the allegations contained in the Plaintiffs' complaint, it is unclear what connection, if any, Mr. Aquino had with Grant Wilfely agency. Because the Plaintiff has not alleged that an employment relationship existed, the complaint must be dismissed for failure to state a claim.

To the extent that the Plaintiffs claims sound in state law, for the same reasons as stated above, the Court does not have subject matter jurisdiction over such claims without a pending federal claim.

As to Anna Manascalco and Grant Wilfely, individuals are not subject to liability under Title VII. *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir.2000); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995). Under the ADA an individual may not be held personally liable for employment discrimination. *See Hallett v. N.Y.State Dep't of Corr. Servs.*, 109 F.Supp.2d 190, 199 (S.D.N.Y.2000). The ADA "provides disabled individuals redress for discrimination by a 'public entity.' That term, as defined in the statute, does not include individuals." *Id.* at 199 (citations omitted); *see also Menes v. CUNY Univ. of N.Y.*, 92 F.Supp.2d 294, 306 (S.D.N.Y.2000) ("Individual defendants may not be held personally liable for alleged violations of the ADA") (citations omitted). Therefore the claims against the individual defendants Anna Manascalco and Grant Wilfely are dismissed in their entirety.

## XI. As to the Claims against Verizon

The amended complaint as it relates to Verizon is rambling and unintelligible. From what the Court can gather, it appears that the Plaintiffs are attempting to connect problems they have had with poor cell phone reception to Mr. Aquino's purported dyslexia. The complaint states that the Plaintiffs "suffered a loss of over $3,000.00 due to the ineffective communication via phone due to plaintiff's dyslexia and inability to communicate on paper." Amended Compl. at 11. Another statement avers that "to date phone service is interrupted and credits have not been adjusted, thus causing undue cell phone use costing over $1,000.00." *Id.* The plaintiffs are seeking $100,000.00 from Verizon to be used to secure appropriate services for the disabled and a public apology.

As an initial matter, the Court notes that the Plaintiffs fail to indicate under what law their claim is based. Although most of the amended complaint alleges violations of the ADA, the section of the complaint that is relevant to Verizon fails to state what law is the basis for this cause of action. In construing the complaint as liberally as possible, it appears that the Plaintiffs are requesting relief under the ADA. However, the Court finds that the amended complaint fails to state a claim under the ADA. The Plaintiffs fail to allege that Verizon refused to provide a service because of a disability, refused to credit his account because of a disability; or interrupted telephone service because of a disability. Since the Court cannot decipher what law the Plaintiffs bring their claim under, the Court must dismiss the claims against Verizon.

## XII. As to the Claims against Doug Shepord

From what can be gathered from the Plaintiffs complaint, it appears that Mr. Douglas Shepord, incorrectly sued in this case as Doug Sheppard, worked in the sales department for New England Securities. The Plaintiffs state that Stephanie Kuka–Aquino had 401(k) accounts with New England securities and that Mr. Shepord: (1) failed to notify the Plaintiffs when representatives of New England Securities left the firm; (2) failed to offer assistance with the accounts; and (3) failed to offer Mr. Aquino disability insurance because of his existing disabilities. Based on these allegations, the Plaintiffs claim that Mr. Shepord violated the ADA.

The Plaintiffs fail to state an actionable claim under Title III, as they do not allege that Mr. Shepord deprived them of any service or accommodation because of their purported disability. *See, e.g., Baker v. New York*, No. 04–6221, 2004 WL 1682780, at *2 (W.D.N.Y.2004), 2004 U.S. Dist. LEXIS 14798, at *5 ("There can be no

action for violation of the ADA without an allegation that the complained of deprivation was a result of the plaintiff's disability."). The complaint states, in conclusory fashion, that "responses were limited, and requesting assistance, were ignored" due to Mr. Aquino's dyslexia. However, the Court cannot fathom how Mr. Shepord discriminated against the Plaintiffs "due to" Mr. Aquino's dyslexia, a disorder related to reading, by way of limiting his communication with him over the phone. In addition, the Plaintiffs' amended complaint also fails to plead violations of any other legal duties imposed by the ADA statute or regulations. The ADA does not require an individual "to acknowledge disabilities," "to offer assistance," "to communicate appropriately," or "to notify" about the status of employees at the company. As such, the Court is compelled to dismiss the claim.

## XIII. Leave to Amend

■■■■■ When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir.2002) (citing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991)). Nevertheless, " '[f]utility' is a valid reason for denying a motion to amend . . . where it is 'beyond doubt that the plaintiff can prove no set of facts in support' of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 70–71 (2d Cir.1999) (citations omitted). Courts have the power to dismiss without leave to amend or replead in "extraordinary circumstances, such as where . . . the substance of the claim pleaded is frivolous on its face . . . ." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) (citing *Moorish Science Temple of Am., Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir.1982)).

Even with the most liberal reading of the complaint, the Court finds that the complaint is completely devoid of any viable cause of action and any amendment would therefore be futile against the following defendants: the Insurance Providers, Dick Furnari, Mryon Hiller, the Creditors, Grant Wilfely, Anna Manascalco, the State of New York defendants, and the Federal defendants. Accordingly, the Court declines to grant leave to amend in this case against those defendants

■■■ The Court grants the Plaintiffs leave to amend against the State of Texas, First West Mortgage Company, the Grant Wilfely Casting Agency, Steven Rubin, Esq., and Doug Shepord. However, the Plaintiffs are warned that filing a frivolous amended complaint may result in sanctions under Rule 11 of the Federal Rules of Civil Procedure. The Court notes with approval Judge Leisure's thoughtful comments in *Spier v. Erber*, No. 89 Civ. 1657, at *10, n. 8 (S.D.N.Y. May 24, 1990).

> It has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed. R.Civ.P. 11. Conversely, a renewed Rule 9(b) motion after an adequate and thorough repleading can also be viewed as frivolous.

*Id.*

## CONCLUSION

**ORDERED,** that the complaint is dismissed in its entirety against Prudential Life Insurance and Casualty Insurance

Company, Dick Furnai, General Assurance Company, Allstate Insurance Company, Myron Hiller, D–Cap Insurance Brokers, J.C. Penny, Macy's, Capitol One, Household Bank, Bankfirst, Exxon/Mobil, and Hyundai Finance Company, the New York State Department of Motor Vehicles, Judge Lisa Confusione, the New York State Family Court, the New York State Supreme Court, County of Nassau, the Honorable Geoffrey J. O'Connell, the State of Texas, Harris County, the Social Security Administration, First West Mortgage Company, Grant Wilfely, Anna Manascalco, and Associates, and the Grant Wilfely Casting Agency, Steven Rubin, Esq., Verizon, Inc. and Doug Shepord

**ORDERED,** that the plaintiffs are permitted to file a second amended complaint within 30 days from the date of this order and that the failure to do so will result in the dismissal of the case against the defendants State of Texas, First West Mortgage Company, the Grant Wilfely Casting Agency, Steven Rubin, Esq., and Doug Shepord with prejudice; and it is further

**ORDERED,** that the Clerk of the Court is directed to send a copy of this Order to the plaintiff by regular first class mail and by certified mail, return receipt requested; and it is further

**ORDERED,** that the Clerk the Court is directed to amend the caption of this case to read as follows:

DARREN AQUINO, STEPHANIE KUKA–AQUINO, Plaintiffs,

-against-

MILLENNIUM HYUNDAI; JUDGE LISA CONFUSIONE; DEBORAH D'AMICO aka DEBORAH BOSWEL; STATE OF TEXAS, COUNTY OF HARRIS; FIRST WEST MORTGAGE COMPANY; GRANT WILFELY CASTING AGENCY; JOHN DOE, JANE DOE; STEVEN RUBIN, ESQ.; NBC, JUDGE JUDY; VERIZON; NEW ENGLAND SECURITIES, DOUG SHEPORD, Defendants.

**SO ORDERED.**